# THE STATE, *ex rel.*, *v.* McCLELLAN.

## (*Knoxville.* September 27, 1888.)

1. CONSTITUTIONAL LAW. *Convicts' "good time" laws. Retrospective laws. Pardoning power.*

Statutes allowing to convicts certain credits on their terms of imprison-
ment in consideration of good conduct, are unconstitutional as to all
sentences in force at time of their passage, as unauthorized exercise
of pardoning power.

Constitution: Art. I., ¿ 20; Art. III., ¿ 6.

Act construed: Acts *1885* (extra session), Ch. 15.

(See 16 Lea, 136.)

2. CRIMINAL LAW. *Convict's term of imprisonment. Illegal release on ha-
beas corpus.*

Where a convict obtains his release before expiration of his term, by
an erroneous judgment on writ of *habeas corpus,* which is subse-
quently reversed, he is not entitled to credit on his term of impris-
onment for the period of his illegal release.

(See Code, ¿ 5576 (M. & V.); ¿ 4781 (T. & S.).

3. SAME. *Same.* "*Good time account.*" *Failure to keep. Parol evidence.*

The record of the conduct of prisoners—termed the "good time ac-
count"—if omitted by the Superintendent of the Penitentiary, can-
not be *supplied* by parol evidence; but if properly kept it may be
*sustained* and *corroborated* by parol evidence, and, *on behalf of the con-
victs, contradicted* if untrue.

Acts construed: Acts 1869–70, Ch. 59, ¿ 7 (Code, ¿ 5559*a*, subsec. 7 (T.
& S.); Acts 1883, Ch. 171, ¿ 14 (Code, ¿ 6338 (M. & V.).

4. SAME. *Same. Same. Presumption when no record is kept.*

Where no "good time account" is kept by the Superintendent, it is
*conclusively* presumed that the prisoner's conduct was unexception-
able, and he is entitled to full benefit of "good time" credits; so
where it is kept he is entitled to full credits for "good time" from
date of last entry showing misconduct.

The State, *ex rel.*, *v.* McClellan.

5. JUDGMENT. *Collateral attack. Notice. Presumption.*

On collateral attack of a judgment of this Court it will be presumed that notice of *certiorari*, if necessary, was properly given, unless the contrary affirmatively appears in the record.

6. HABEAS CORPUS. *Appeal. Appearance bond.*

A bond given by a convict released on *habeas corpus*, for his appearance before this Court upon appeal by the opposite party, is valid and enforceable.

(See Acts 1887, Ch. 157.)

---

FROM HAMILTON.

---

Appeal in error from Circuit Court of Hamilton County. D. C. TREWHITT, J.

H. B. CASE for Johnson.

VERTREES & VERTREES, W. D. SPEARS, and Attorney-General PICKLE for McClellan.

SNODGRASS, J. The relator, Johnson, was a convict in the penitentiary, and sued out before Judge Trewhitt a writ of *habeas corpus*, to be released while in service at the branch prison at Inman. On the hearing he was discharged, and the defendant, who was the Assistant Warden, having Johnson in immediate charge, representing the State, appealed.

The facts necessary to be stated for the determination of the questions, the relator makes upon the legality of his imprisonment, are as follows: Johnson was convicted of robbery and sentenced

to imprisonment for twenty-one years by the Criminal Court of Shelby county, his term commencing on June 24, 1875. On · December 29th following he escaped, but was captured and returned to prison May 14, 1876. January 13, 1883, his sentence was commuted by Governor Hawkins to sixteen years. About three years after this he sued out a writ of *habeas corpus* before Judge Frank T. Reid, of the Circuit Court of Davidson county, on the ground that his time had expired if he was properly credited with the "good time" allowed by statute, and obtained his release, being discharged February 23, 1886.

This action of Judge Reid was reversed by the Supreme Court where the case was carried by *certiorari*, and properly determined against the relator, and on April 31, 1882, he was recaptured and returned to prison. Thereupon he brought this action September 20, 1887.

In his petition he sets up, that allowing the good time which statutes previous to 1885 gave (which was one month for the first year, two months for the second year, three months for the third year, and three months for each subsequent year, to the 10th inclusive, and four months for each remaining year of the time of imprisonment), he was entitled to an allowance of fifty-one months, which left eleven years and nine months of the sixteen years he had to serve, and that about twelve years and three months had elapsed, and he was entitled to his liberty.

The State, *ex rel.*, *v.* McClellan.

The act of 1885 (passed at the extra session, June 12), Acts Ex. Sess., p. 87, is also referred to, and it is insisted that the relator was and is entitled to the benefit of that act, but such cannot be its effect, though it purports to be for the benefit of those then as well as thereafter confined in the penitentiary, because to the extent of provision for those then confined, it is an attempted exercise of the pardoning power which is vested alone in the Governor under the Constitution, and is void. In the time which has "elapsed" he includes that during which he was out of prison after his discharge, insisting first, that the subsequent reversal by the Supreme Court was void, because done in his absence and without notice; and second, that if the reversal was valid, yet he was nevertheless legally released in the interim, and his time should be counted as a part of the period of his term.

There is nothing in either of these positions. If notice was necessary of a *certiorari* in a case of this kind, which we by no means intend to decide, it would be presumed on this collateral attack of the record of this Court unless it therein affirmatively appeared that notice had not been given. The reversal determined the illegality of the discharge, and the time elapsing until re-imprisonment cannot be counted as time in prison. The imprisonment contemplated by the statute is confinement in fact, and not in legal or other fiction.

The only other question on the merits of this controversy proper to be determined is on the statute of "good time."

The Act of 1869–70, T. & S. Code, Section 5559a, Subsection 7, and the Act of 1883, M. & V. Code, Section 6338, which are identical, provides that the Superintendent of the Penitentiary shall keep a correct register of the conduct of each convict, to be termed the "good time account," in which he shall faithfully record the exact conduct of each convict, and each convict who shall demean himself uprightly shall have deducted from the time for which he may have been sentenced the time stated in a preceding part of this opinion: "The reduction of time herein provided for is upon the consideration of continued good conduct."

The last Act referred to provides that "such record shall be evidence for or against the convict in any of the courts of this State."

Such a record is produced in this case, or rather a very imperfect one, which must be treated for the purpose of determining the question as the "record" on that subject. It contains the name, age, color, and description of the prisoner, with other things not essential to be stated here, and following these under the heading of "remarks" in respect to the prisoner, adds, "escaped from prison December 29, 1875, by means of a driver, George Ament, concealing him in a furniture wagon. Recaptured May 14, 1876. Attempted to escape through roof of prison August 19, 1872. Sentence

commuted to sixteen years. Good time to be allowed by Warden Waters. January 13, 1883."

This is all that appears. If we could look to the evidence, in the absence of any further record on that subject, it would appear that the prisoner's conduct has not been such as to entitle him to all, if any, of the good time since the date of his last recorded effort to escape, but we hold that while such evidence might be heard to corroborate or sustain a record showing his conduct, or while it might be heard, if offered by the prisoner to contradict such recitations, it cannot be heard to supply one. It is the duty of the Superintendent to keep, or have kept, under his vigilant personal supervision, the record directed to be kept by the statute, and if he fails to keep it the prisoner's right to good time shall not be left to the uncertainty of treacherous memories and oral testimony. In the absence of the record to the contrary, it will be conclusively presumed that he is entitled to the good time. The record, when properly kept, will be evidence against him, but subject to be contradicted if not in accordance with the facts.

This is the construction which common humanity dictates as embodying the intent of the Legislature, which was to provide for the keeping of an accurate account of the conduct of the State's prisoners by its own officers. It was intended that they should have the benefit of the time, and provision was made to ascertain accurately, at any time, how much should be given. If the State, through its

officers, neglects to keep the account required, in favor of liberty it will be presumed that the record was good. The convict himself is helpless. He can have no record kept, and when he makes a good one must trust to the vigilance and integrity of those who have him in charge to enter it in the " account." If they can neglect that, and he must be left to the necessity of supplying it by evidence, it is easy to see to what injustice and trouble this would lead. Such a thing was never contemplated by the Legislature, and to give the act that construction would be to render it practically inoperative. It is, of course, quite easy to keep the record required. If not kept the omission will be treated as a waiver of any claim which the State would have to insist on an abatement of good time because of misconduct.

The last entry of misconduct on the part of the prisoner is of August 19, 1877. Prior to this date the record shows sufficient misconduct to justify the denial of any " good time." From this date he must be allowed " good time " in accordance with the Act of 1869–70.

It amounts to two years eight months and twenty-three days. This deduction from the sixteen years leaves two years ten months and fifteen days which he has to serve, and for this time he will be recommitted to the penitentiary.

The only remaining question in the case is on the appeal bond. At the last term the relator failed to appear, and judgment *nisi* was taken

The State, *ex rel.*, *v.* McClellan.

against him and his sureties on his bond given for appearance here when the case was appealed.

Two defenses are interposed to the demand for final judgment on the *scire facias* made by the Attorney-General. The first is, that he was sick, and therefore could not appear; the second, that no appeal could have been legally granted at the time, and therefore the bond is void. There is nothing in either defense, and judgment final will be entered.

The judgment of the Circuit Judge discharging defendant is reversed, relator remanded to custody, and cost adjudged against him.