J. S. FITE, Superintendent of County Workhouse, *v.*
STATE, *ex rel.* NICK SNIDER.

(*Jackson.* April Term, 1905.)

1.  **CONSTITUTIONAL LAW.** Statute specifically defining cred-
    its for good conduct of convicts, in existence at date of con-
    viction, is not an invasion of the pardoning power.

    Legislation, authorizing the commutation of penal sentences for
      good conduct of convicts confined in prison, where the credits
      are specifically defined by statute, and where the provisions of
      the statute operate alone upon sentences of convicts who have
      been imprisoned subsequent to the passage of the statute, is not
      an invasion of the constitutional prerogative of the governor in
      granting pardons, because such statute, in existence at the date
      of the judgment against the convict, becomes a part of the sen-
      tence and inheres into the punishment assessed. (*Post, pp.* 655-
      658.)

    Code cited and construed:  Sec. 7423 (S).

    Acts cited and construed:  1869-70, ch. 59, sec. 7; 1885 (ex. ses.),
      ch. 15; 1891, ch. 123, sec. 18.

    Constitution cited and construed:  Art. 3, sec. 6.

    Cases cited and approved:  State, ex rel., v. McClellan, 87 Tenn.,
      52-55; Rogers v. State, 101 Tenn., 425; State v. Dalton, 109 Tenn.,
      544; Opinion of Justices, 13 Gray (Mass.), 618; State v. Austin,
      113 Mo., 538; Woodward v. Murdock, 124 Ind., 439; In re Fuller,
      34 Neb., 581; Ex parte Nokes, 6 Utah, 106; State v. Patterson
      (N. J. Sup.), 22 Atl., 802; United States v. Wilson, 7 Pet., 150;
      Osborn v. United States, 91 U. S., 474, 478; Ex parte Garland,
      4 Wall., 380; Ex parte Wadleigh, 82 Cal., 518; In re Canfield, 98
      Mich., 644.

Fite v. State, ex rel.

2. **SAME.** Statute authorizing commutation of sentences in discretion of a board, without prescribing the schedule of specific credits for good conduct, is an unconstitutional delegation of legislative authority.

A statute authorizing the board of commissioners of the county workhouse to deduct for good conduct, and on recommendation of the superintendent, a portion of the time for which any person has been sentenced, or a portion of the fine which he is working out, but failing to prescribe any schedule of specific credits to be allowed for good conduct, and leaving the whole matter to the arbitrary discretion of the board of workhouse commissioners, is plainly a delegation of legislative authority, and is unconstitutional. (*Post, pp.* 648-655, 658-660.)

Code cited and construed:    Sec. 7423 (S.).

Acts cited and construed:    1891, ch. 123, sec. 18.

Constitution cited and construed:    Art. 1, sec. 6.

Cases cited and approved:    State, ex rel., v. McClellan, 87 Tenn., 52-55; State v. Dalton, 109 Tenn., 544; People v. Cummings, 88 Mich., 249; Commonwealth v. Halloway, 44 Pa., 210; State, ex rel., v. Board, 16 Utah, 478-488.

Case cited and disapproved: State, ex rel., v. Peters, 43 Ohio St., 629.

3    **SAME.** Statute unconstitutional and void in part may be valid in other parts, when.

An unconstitutional and void provision of a legislative act may be so independent of the other provisions of the act as not to affect their constitutionality. (*Post, p.* 659.)

Code cited and construed:    Sec. 7423 (S.).

Acts cited and construed:    1891, ch. 123, sec. 18.

Case cited and approved:    State, ex rel., v. Cummins, 99 Tenn., 682.

FROM SHELBY.

Appeal from the Second Circuit Court of Shelby County.—J. S. GALLOWAY, Judge.

ATTORNEY-GENERAL CATES, for appellant.

L. T. M. CANADA, for appellee.

MR. JUSTICE M'ALISTER delivered the opinion of the Court.

The question involved in this case is in respect to the constitutionality of a certain provision of the workhouse law embodied in Shannon's Code, section 7423, namely: "The board of commissioners may on recommendation of the superintendent, deduct, for good conduct, a portion of the time for which any person has been sentenced, or a portion of the fine, if he or she be working out a fine."

The subject-matter of the inquiry arises on the petition of one Nick Snider, prisoner in the county workhouse of Shelby county, for the writ of habeas corpus to be discharged from said confinement upon the ground that a proper credit and allowance for good time under said act would entitle him to his liberty. The record

reveals that the prisoner was under confinement in said workhouse under the judgment of the criminal court of Shelby county, on the 17th day of November, 1903, upon a conviction of unlawfully carrying a pistol, and the assessment of a fine of $50 and confinement in said workhouse for a period of eleven months and twenty-nine days. On the 14th of March, 1904, in accordance with the recommendation of the superintendent of said workhouse, the board of workhouse commissioners directed that the relator, Snider, be relieved of eight months of his term of imprisonment on account of his good conduct.

It further appears that on March 28, 1904, said board of workhouse commissioners directed that the sum of $45 of the fine of $50 imposed upon the relator by judgment of the criminal court be remitted. Thereafter, on the 1st of April, 1904, said board of workhouse commissioners, in view of the credits allowed on fine and sentence of said Nick Snider, relator, ordered his discharge from the county workhouse upon payment of all costs, which was accordingly done.

It appears, however, that the judge presiding over the criminal court of Shelby county, conceiving that the action taken by the board of workhouse commissioners was beyond their authority, issued an order directing the superintendent of the workhouse to hold relator in custody until he had served out his term of imprisonment and paid the fine imposed, or had secured or worked out said fine in the manner directed by law. Thereupon the

relator filed his petition for the writ of habeas corpus, which being heard by the judge of the second circuit court of Shelby county, it was adjudged that the relator was illegally restrained of his liberty, and he was ordered to be discharged, and the defendant, Fite, as superintendent of the Shelby county workhouse, was taxed with all costs of proceeding.

The said Fite, superintendent aforesaid, appealed, and has assigned the following error: "The orders of the board of workhouse commissioners of Shelby county relieving relator of $45 of the fine of $50 imposed upon him, and reducing jail sentence from eleven months and twenty-nine days to three months and twenty-nine days, were beyond the authority vested in said board of workhouse commissioners, and were null and void, because:

"(1) The statute under which said board claimed authority to make said orders is unconstitutional, in that it attempts to confer the pardoning power upon said board, in violation of section 6 of article 3 of the constitution of the State; and,

"(2) It is also violative of section 1 of article 6 of the constitution of the State in that it attempts to confer upon said board judicial power to review, revise, and modify valid judgments of criminal and circuit courts of this State."

The provisions of the workhouse law material to be mentioned in this investigation are embodied in section 18, c. 123, p. 271, of the act of 1891, compiled in Shannon's Code in section 7423, namely: "The board of com-

missioners may on recommendation of the superintend-
ent deduct, for good conduct, a portion of the time for
which any person has been sentenced, or a portion of the
fine, if he or she be working out a fine. Should any pris-
oner escape, he or she shall forfeit all deductions that
have been allowed and when recaptured, should be made
to work out the costs of same in addition to other costs
in the case. The commissioners may discharge any pris-
oner when satisfied from the certificate of physician in
charge that he or she is physically unable to do labor
or for any cause when they may deem it best for the in-
stitution and the public good."

The argument of the attorney-general is that the exer-
cise of the power conferred upon said board of work-
house commissioners is both violative of section 6 of ar-
ticle 3 of the constitution of the State, vesting in the
governor the pardoning power, and is also in contra-
vention of section 1, article 6, of the constitution, vest-
ing all judicial power in the courts of this State, because
the necessary effect of the exercise of said power by the
board of workhouse commissioners is to constitute said
board a judicial tribunal for the purpose of reviewing,
modifying, and reversing the judgment of courts of com-
petent jurisdiction acting under the power vested in
them by the constitution of the State.

We have several cases in this State in which intima-
tions were thrown out touching the constitutionality
of such acts, but no case in which the precise point now
presented was involved. In *State* v. *Dalton,* 109 Tenn.,

544, 72 S. W., 456, the court was dealing with the power of the circuit judge to relieve a convict of imprisonment imposed by a valid judgment rendered at a former term. In its opinion this court said: "The vestiture of the power to grant reprieves and pardons in the chief executive is exclusive of all other departments of the State, and the legislature cannot, directly or indirectly, take it from his control, and vest it in others, or authorize or require it to be exercised by any other officer or authority. It is a power and a duty intrusted to his judgment and discretion, which cannot be interfered with, and of which he cannot be relieved. The circuit judge's action in remitting the imprisonment and releasing the costs adjudged against the defendant cannot be sustained under section 7226 of Shannon's Edition of the Code or Act 1891, p. 271, c. 123, section 18 (Shannon's Code, section 7423), authorizing the discharge of convicts confined in workhouses under certain circumstances."

In *The State, ex rel.*, v. *McClellan*, 87 Tenn., 52-55, 9 S. W., 233, the act of 1885 (Acts 1885, p. 87, c. 15) allowing to convicts certain specific credits on their terms of imprisonment in consideration of good conduct was involved, but it appeared in that case that the judgment under which the prisoner was serving had been rendered prior to the passage of the act of 1885, and for that reason the court expressed no opinion touching its constitutionality. In that case, however, the court said as follows:

"The act of 1885 (passed at the extra session June

12)  .  .  .  is also referred to, and it is insisted that
the relator was and is entitled to the benefit of that act;
but such cannot be its effect, though it purports to be
for the benefit of those then as well as thereafter con-
fined in the penitentiary, because to the extent of provis-
ion for those then confined it is an attempted exercise
of the pardoning power, which is vested alone in the
governor under the constitution, and is void."

Again, in the case of *Rogers* v. *State*, 101 Tenn., 425,
47 S. W., 697, the question as to the constitutionality
of this section of the workhouse law was raised, but not
decided, as the case went off on another point.

There seems to be much authority on this subject in
other States of the union, which we find upon exami-
nation is not altogether harmonious.

The supreme court of Michigan in *People* v. *Daniel
Cummings,* 88 Mich., 249, 50 N. W., 310, 14 L. R. A.,
285, in passing upon the constitutionality of a statute
of that State providing for indeterminate sentences and
the disposition, management, and release of criminals
under such sentences, says as follows: "It is not clear
from the reading of this statute whether the board of
control is given power of absolute discharge from im-
prisonment or not, if so it would be clearly un-
constitutional, as an exercise of such power would cer-
tainly involve one of two things, and perhaps both.   It
would be an exercise of judicial power in determining
the term of imprisonment of a citizen or an act of grace,
to wit, the bestowing of a pardon and release of the pris-

oner before his term of imprisonment has expired. The judicial power of this State by the constitution is vested in certain specified courts, and the pardoning power is vested absolutely in the governor of the State." The court then proceeded to hold that this act provided for the exercise of the pardoning power and also for the exercise of judicial power by said board of control.

In *Commonwealth* v. *Halloway,* 44 Pa., 210, 84 Am. Dec., 431, it was held that such legislation was not an interference with the pardoning power, for the reason that "pardon operates directly on the crime, and only indirectly on the criminal." But it was further held by a divided court that such diminution of sentence by reason of good conduct was an interference with judicial power, and therefore void. In the midst of its opinion the court said as follows: "From what judicial sentence may not the legislature direct deductions to be made, if this act be constitutional? What they may do indirectly they may do directly. If they may authorize boards of inspectors to disregard judicial sentences, why may they not repeal them as fast as they are pronounced, and thus assume the highest judicial functions?" Further on the court says: "In respect to one of the relators, who was convicted and sentenced before the law was passed, it is considered very clear that it is a legislative impairing of an existing legal judgment. But is it not equally so in respect to him who was sentenced since the date of the act. The court could not have taken the act into account in measuring the sentence because they

could not know how many days of abatement the pris-
oner would earn.

In *State, ex rel. Attorney-General,* v. *Peters,* 43 Ohio
St., 629, 4 N. E., 81, the supreme court of that State
dealing with a kindred statute, held:

"It was not an interference with executive or judicial
powers conferred on these departments by the constitu-
tion of the State."

In *State, ex rel.,* v. *State Board of Correction et al.,*
16 Utah, 478-488, 52 Pac., 1090, a similar question arose,
and the supreme court of that State held the act uncon-
stitutional, as being in violation of the governor's con-
stitutional prerogative of pardon. That court said:
"The power to either pardon or commute can only be
exercised by that authority in which it is vested by the
constitution." On the other hand, such statutes allow-
ing good time as credit on sentences have been upheld.
*Opinion of Justices,* 13 Gray (Mass.), 618; *State* v. *Aus-
tin,* 113 Mo., 538, 21 S. W., 31, *Woodward* v. *Murdock,*
124 Ind., 439, 24 N. E., 1047; *In re Fuller,* 34 Neb., 581,
52 N. W., 577; *Ex parte Nokes,* 6 Utah, 106, 21 Pac.,
458; *State* v. *Patterson* (N. J. Sup), 22 Atl., 802.

The congress of the United States, it appears, has also
provided for credits on sentences of federal convicts con-
fined in state penitentiaries where there is no statute of
the particular state providing for such allowances. Rev.
St., sections 5543, 5544 [U. S. Comp. St. 1901, p. 3721].

We are of opinion, upon an examination of the
authorities and upon principle, that such legislation,

where the credits are specifically defined by statute, and where the provisions of the statute operate alone upon sentences of convicts who have been imprisoned subsequent to the passage of the statute, is not an invasion of the constitutional prerogative of the governor. Said Chief Justice Marshall in *United States* v. *Wilson,* 7 Pet., 150, 8 L. Ed., 640: "A pardon is an act of grace proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from punishment the law inflicts for a crime he has committed. . . . It releases the offense and obliterates it in legal contemplation." Per Justice Field in *Osborn* v. *United States,* 91 U. S., 474, 478, 23 L. Ed., 388. A full and absolute pardon releases the offender from entire punishment prescribed for his offense, and from all the disabilities consequent upon his conviction. *Ex parte Garland,* 4 Wall., 380, 18 L. Ed., 366.

Again: "A pardon discharges the individual designated from all or some specified penal consequences of his crime. It may be full or partial, absolute or conditional." Bouvier's Law Dictionary, title "Pardon."

We think it quite obvious that an act of the legislature specifically defining credits for the good conduct, in existence at the date of the judgment against the convict, becomes a part of the sentence, and inheres into the punishment assessed. In California a statute providing in express terms that certain credits or deductions from a term of imprisonment shall be allowed for good con-

duct, without requiring any action on the part of the governor for this purpose, was held not to be unconstitutional as an infringement on his power to pardon, as it does not take away or interfere with such power in any way. In the opinion of the court the statute simply fixed the term of imprisonment in certain cases and upon certain conditions, and this provision entered into and became a part of the judgment of the court below. *Ex parte Wadleigh*, 82 Cal., 518, 23 Pac., 190.

*In re Canfield*, 98 Mich., 644, 57 N. W., 807, it was held that the right of a convict to a prescribed reduction from his sentence upon compliance with the rules of the prison, which were prescribed by 2 How. Ann. St. Mich. section 9704, was one of which he could not be deprived, and that the act of 1893, the effect of which was to deprive a person sentenced under the prior statute of this right in part by reducing the amount of his credits, is to that extent an *ex post facto* law, because its effect is to increase, and not to mitigate, his punishment. It was held, therefore, that the prisoner was entitled to credit upon the basis of the statute under which he was sentenced.

Such, however, would not be the effect of an act of the legislature passed subsequent to the conviction of a particular convict, for, as held in *State, ex rel.*, v. *McClellan*, supra, that would be a clear invasion of the prerogative of the governor. The scale of the punishment for the violation of a particular statute is fixed in the

114 Tenn—42

first place by the legislature, and in the next it is administered by the court or jury. The power of the governor under the constitution is exercised of course, with reference to penalties and punishments inflicted by particular statutes, and when judgment is pronounced upon the convict assessing his punishment by implication of law he is entitled to the provisions of a statute prescribing credits for his good behavior; but the credits are in the nature of a payment by the State to the convict for his good behavior, in order to stimulate him to conform to the rules of the institution and to avoid the commission of crimes and misdemeanors during his imprisonment. Such statutes are prompted by the highest motives of humanity, and are looked upon with favor both by State and federal legislatures.

The constitutional infirmity of section 18 of the workhouse law of 1891, now under review, is that no specific credits are provided as a reward for good behavior of the convict. The whole matter is left to the arbitrary discretion of the board of workhouse commissioners. It is plainly a delegation of legislative authority, which renders this part of the workhouse law unconstitutional and void. In this respect section 18 of the workhouse law is wholly unlike the acts of 1869-70 and 1885, which specifically prescribed the credits that are to be allowed, and which statutes have been enforced from time to time by the courts.

As already seen in *State* v. *McClellan,* supra, the act of 1869-70 was recognized by the court as a constitution-

al enactment, and it was accordingly applied in fixing
the unexpired term of imprisonment of relator in that
case. It may be remarked in this connection that the
acts of congress in allowing credit for good time specifi-
cally prescribed the scale by which they are to be gradu-
ated. But while section 18 of the workhouse law is for
this reason unconstitutional and void, it is so independ-
ent of the other provisions of the act as not thereby to
affect their constitutionality. See *State, ex rel., v. Cum-
mins,* 99 Tenn., 682, 42 S. W., 880. If the legislature
had fixed a scale of credits for allowances of good time
to workhouse prisoners, this section of the act would
stand within constitutional limitations; but without it
it is clearly void as a delegation of legislative authority.
So, if the legislature had fixed some graduated scale for
the reduction of fines assessed against the prisoners,
then the board of workhouse commissioners might have
carried out the legislative authority. But, as already
seen, section 18 of the workhouse act authorizes the com-
missioners to remit a portion of the fine without fixing
any basis for its remission.

As the law now stands, the remission of fines and
reduction of terms of imprisonment of convicts confined
in the county workhouses of the state are wholly with-
out authority, and subject such officials granting them
to individual liability for malfeasance in office. It is
the duty of the courts and executive officers of the state
to disregard, as well as to resist with all their official au-
thority, the exercise of unlawful functions and assumed

power of those who are acting in open violation of the statutes and constitution of the state. It is very plain that under the existing laws, and until their amendment by the legislature, the governor alone is clothed with authority to remit fines and penalties and to reduce the terms of imprisonment of convicts confined in the county workhouse under judgments of the circuit and criminal courts of the State.

The judgment of the circuit court will therefore be reversed, the cause remanded, and the prisoner committed to the sheriff of the county, to be returned to the official in charge of the county workhouse, to serve out his fine and imprisonment assessed by the criminal court of Shelby county.