## W. S. Scrivnor v. State.

No. 11850.   Delivered June 28, 1925.
Rehearing denied State October 9, 1929.
Second application for rehearing by State denied November 6, 1929.

The opinion states the case.

*Hughes & Monroe* of Dallas, for appellant.

*D. B. MacInery,* County Attorney of Galveston County, *Ralph Crawford,* Asst. Co. Attorney of Galveston County and *A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for robbery; punishment, life imprisonment in the penitentiary.

A statement of the facts in this case would add nothing to the opinion and same is therefore omitted.

Appellant seeks reversal on but one point. The indictment, in addition to charging the robbery which forms the basis for the prosecution herein, also sets up that at a former time appellant had been convicted of another robbery in Dallas county, Texas, the purpose of this being to bring the case within the provisions of Art. 62, P. C., so that appellant, if convicted, might be given the highest penalty for robbery, and this was in fact done.

Upon the ground that he had been granted a full, free and unconditional pardon by Governor Miriam Ferguson in the former case, and that the judgment of conviction in said case, therefore, could not properly be made a predicate for plea and proof of his former conviction for the same or a similar offense, appellant objected to the indictment, the judgment and proof upon the ground of his having been so pardoned. There seems no dispute of the fact of the granting of such pardon, or of its full and unconditional character, hence we are faced only by the question as to its effect. Appellant relies on Sanders v. State, 108 Texas Crim. Rep. 467. The State does not question the soundness of the opinion in that case, but differentiates same and cites many authorities.

To us it seems a question resting entirely on the effect given by us to a full and unconditional pardon. If such pardon properly absolves its grantee from all legal consequences attached to and flowing from his conviction, the contention of appellant must be sustained. Otherwise not. Ruling Case Law, Vol. 20, Secs. 40-41, p. 556, upon citation of a great number of authorities, says: "In the case of a full pardon, it relieves the punishment and blots out of existence the guilt of the offender, to such an extent that, in the eye of the law, he is as innocent as if he had never committed the offense. It has been held that the effect of a pardon cannot be so restricted, even by express terms, as to leave the person with the legal disabilities still resting upon him. Such a restriction would be repugnant to the grant and void; for, although the disabilities are no part of the judgment, they are attached to the convict as the legal marks of infamy resulting therefrom, and, when the offense is pardoned, the judgment, with the legal consequences flowing from it, is removed." It is said in Sec. 41, id.: "It is now the accepted doctrine that a full pardon absolves the party from all legal consequences of his crime." Among other authorities which support this statement are Osborn v. United States, 91 U. S. 474; Knote v. United States, 95 U. S. 149; Carr v. State, 19 Texas Crim. App. 635; Bennett v. State, 24 Texas Crim. App. 73; Diahl v. Rogers, 169 Pa. St. 316; Fite v. State, 114 Tenn. 646. However, under Sec. 44, id., it is stated that there is an irreconcilable conflict of authorities on the question as to whether a prior pardoned offense may be considered as a prior conviction,—and attention is called to the fact that by statute in some states it is expressly provided that such conviction though pardoned, may thereafter still be plead and proved as such prior conviction. In case where such statutes exist, if they be constitutional, there would seem no trouble; nor would there be any trouble in case the pardon granted was conditioned on its grantee thereafter observing and keeping the laws; but we confess ourselves wholly unable to accept the definition of a full pardon agreed upon by practically all the courts, and as set out above in this opinion,—and then turn around and destroy our acceptance of such definition, and contradict ourselves by holding that part of the legal consequences only are removed by such pardon, and part remain.

To hold on the one hand that a full pardon absolves its grantee from *all legal consequences,* of the conviction,—and on the other, that by virtue of the law, and with its sanction, the fact of such conviction may be thereafter plead and proved in order to increase such

grantee's punishment in a subsequent case,—and that such holdings are not in conflict, seems to us but a play on words, a sort of fraud on reason and logic. The enhancement of the punishment in the second prosecution depends on the former conviction; and of stark necessity such enhancement is in consequence of such former conviction, and in strict legal consequence thereof. The fact that this particular consequence does not arise and is not called into life, and has no application, save and except there be a subsequent charge against such party,—makes absolutely no difference in the legal principle applicable. Not till the bar sinister be invoked by the arising of some subsequent occasion, does the right to testify as a witness, to vote, to hold office, to sit on the jury, in regard to property in some states,—call for assertion and exercise of the restored disabilities consequent upon granting of a full pardon. Absolution from the legal consequence of the conviction, which has resulted from the fact of pardon, has existed in each such case since the grant and acceptance of such pardon.

Turning to the authorities cited by the State in its brief and argument herein, we note that it refers to Carlesi v. New York, 233 U. S. Supreme Court Rep., 58 Law Ed., 51, as holding a contrary view to that expressed by us. In the opinion therein the court said:

"As the state courts held that the statute directed the consideration of the prior conviction despite the pardon, we must treat the case as if the statute so expressly commanded, and test its repugnancy to the Constitution of the United States upon that assumption."

Further, the court says:

"Determining as we do only the case before us, that is, whether the granting of a pardon by the President for a crime committed against the United States operates to restrict and limit the power of the state of New York to punish crimes thereafter committed against its authority, and in so doing to prescribe such penalties as may be deemed appropriate in view of the nature of the offense and the character of the offender, taking in view his past conduct, we must not be understood as in the slightest degree intimating that a pardon would operate to limit the power of the United States in punishing crimes against its authority to provide for taking into consideration past offenses committed by the accused as a circumstance of aggravation, even although for some such past offenses there had been a pardon granted.

Indeed, we must not be understood as intimating that it would be beyond the legislative competency to provide that the fact of the

commission of an offense after a pardon of a prior offense should be considered as adding an increased element of aggravation to that which would otherwise result alone from the commission of the prior offense."

It thus appears that the extent of the holding in said case is; that when there is a statute making a former pardoned conviction usable in a subsequent case for the purpose of enhancing the punishment, this is not a violation of the rights of the accused. We have no complaint of this view, but will venture the suggestion that the end thus desired might be better reached by a condition in the pardon requiring observance of law thereafter by the grantee.

The holdings of the Kentucky courts, beginning with Mount v. Commonwealth, 2 Duv. 94, are also stressed in the brief of the State herein. In the case mentioned it was said:

"The pardon relieved the convict of the entire penalty incurred by the offense pardoned, and nothing else or more. It neither did nor could relieve from any penal consequence resulting from a different offense committed after the pardon and never pardoned. The increased punishment prescribed by statute for the subsequent offense was no part of the penal consequences of the first offense, but applied exclusively to the last as aggravated by its repetition of the same crime. The legislature, as required by justice and policy, ought to have provided a severer punishment for repeated than for only one crime; and whether it had done so by duplicating for a second offense the punishment of the first, or by any other measure of augmentation, cannot be material. In any aspect the augmented punishment is for the last and not at all for the first offense; and, of course, a pardon of the first could in no way or degree operate as a pardon of the last offense or remission of any portion of the punishment denounced for perpetration of it."

All these cases proceed on the theory that the enhanced penalty is in no sense a necessary legal consequence of the prior and pardoned offense. With the utmost deference, the position seems wholly unsound. A commits burglary of B's house. The punishment is two to twelve years for the offense which A has thus committed. He may have committed a burglary every day for five years prior, but this latter fact could not be either pleaded or proved in our practice. This by reason of the law. But, if he at a prior time had been finally convicted for one other burglary, this fact,—also by reason of the law,—could be pleaded and proved, and this being done necessarily enters into and becomes an element, not in A's crime for

burglarizing B's house, but in determining the punishment therefor. It is said A is punished more severely for the one crime,—the second one,—because he is an habitual criminal. Mr. Bishop says in Sec. 919 of Vol. 1 of his New Criminal Law, that the mistake lies in considering the latter offense, the *second one,* because the first one having been pardoned, the latter is not the second one. If it be said that the later burglary by A makes him an habitual criminal, it might well be asked what makes him such in terms of the law? There could be but one answer, which is that the plea and proof of his former conviction makes him such. To us it seems idle to say that such conviction may not be invoked when the question at issue is A's subsequent right to testify, his electoral right, his other rights as a citizen, to sit on the jury, to practice his profession, his right in all of said instances arising because all legal consequences of his conviction have been forever cancelled, annulled and made void, and because he has new standing and credit in all these instances; and yet, somehow, these authorities proceed to say that such conviction can be looked to and invoked and all its hurtful legal consequences be used against the accused if he thereafter is brought before the bar of justice charged with a similar offense. To merely say in words that his punishment is only affected by the commission of the new crime, does not make it so and can not.

If the pardoning power in such matters had granted him grace upon express condition that its operation should no longer be complete and full in the event the grantee fell into evil ways, and again violated the law, then indeed there might be tenable ground for the State's contention, but such is not the case when the pardon is full and unconditional.

The State seems to rely upon State v. Edelstein, 262 Pac. 630, an opinion by the Supreme Court of Washington in December 1927. Said opinion quotes with approval Sec. 963, Bishop on Criminal Law, subdiv. 4, as follows: "It has been held in Ohio that a pardon obliterates an offense and that hence the conviction in regard to which it is granted is not a former conviction, within the habitual criminal act. This reasoning is very technical. A person who has received clemency but instead of reforming persists in his evil ways certainly should not as to a subsequent offense be treated better than if the pardon had been denied. Accordingly the Kentucky court has held that such a pardon does not relieve him from any penal consequences resulting from his subsequent offenses, and this reasoning has been adopted by the United States Supreme Court"—which

language is attributed to Mr. Bishop. We have no desire to be critical. The language of Mr. Bishop on this subject appears in Bishop's New Criminal Law, Sec. 919, and is as follows:

"If a second offense is made by statute more heavily punishable that the first, then if the first is pardoned, it is obliterated. The consequence of which is that a like offense afterward committed is not a second, and is punishable only as a first. We have a case wherein this reasoning was overlooked, and the contrary was held; the learned judge observing that the pardon 'neither did nor could relieve from any penal consequence resulting from a different offence, committed after the pardon, and never pardoned.' True, but the pardon by annulling the one offence prevented the other from being the second."

The case referred to in the sub-quotation just above, is the Kentucky case of Mount v. Commonwealth, 2 Duv. 93, which seems the case relied upon by practically all of the authorities holding the view that a full pardon does not prevent the State from pleading the pardoned offense in a subsequent prosecution, as a prior conviction. We make this observation in regard to the seeming contradiction in the quotations from Mr. Bishop. In 1923 Bishop's Criminal Law, 9th Ed., was gotten out apparently by editors, whose ability is not questioned, but whose Sec. 963, supra, seems to announce a totally different conclusion from that reached by Mr. Bishop himself in 1892, when he used the language set out in Sec. 919, supra. We regret that we cannot join in the approval of Sec. 963 written by the editors of Bishop's Criminal Law, accorded by the opinion in State v. Edelstein, supra. We prefer to accept the statement of Mr. Bishop appearing in his New Criminal Law, Sec. 919. The only original suggestion of the editors in said Sec. 963, subdiv. 4, is as follows: "This reasoning is very technical. A person who has received clemency but instead of reforming persists in his evil ways, certainly should not as to a subsequent offense, be treated better than if the pardon had been denied." Just the relevance and force of this observation bearing upon the extent of the legal effect of a pardon, is not perceived. Surely if the matter was being debated, the fact that the chief executive so questioned the correctness of the former conviction as to grant a pardon therefor of said offense and all its legal consequences, this would appear to put the accused in a better light and attitude, than if such clemency had been refused.

The Edelstein case, supra, selects as its preference the doctrine of the Kentucky and the New York courts as against that of the Ohio

and Virginia courts. No reference is made in said opinion to the Pennsylvania courts, in line with the doctrine of the Virginia and Ohio courts, beginning with Commonwealth v. Morrow, 9 Phila. 583, on down to Diahl v. Rodgers, 169 Pa. St. 316. In Ruling Case Law, Vol. 20, Sec. 41, p. 557, Fite v. State, 114 Tenn. 646, is cited as supporting the proposition that the pardon releases the offender from the entire punishment for the offense pardoned "and from all disabilities consequent from his conviction." So in Vermont it is correctly held that the pardoning power of the Governor can neither be restricted nor taken away by legislative action, and that any attempt at such restriction by the legislature is unconstitutional. We refer to In Re Discharge of Convicts, 73 Vt. 414, 56 L. R. A. 658.

There can be no dispute of the simple proposition that a pardon does not erase from the records of the courts the physical fact of the entry of the judgment and sentence, nor does it take out of the books the historic reference to the case, but it does, can and should, if full and unconditional, obliterate all legal consequences thereafter arising under the law, which flow from such conviction, one of which we deem to be the use of such conviction by plea and proof in a subsequent charge for a similar offense, as a means of bringing about a heavier penalty in such case.

The State contends that the principle involved in this case is wholly different from that in the Sanders case, supra, it being said that Sanders' conviction in the case wherein he was given a suspended sentence, was prior to the time of the granting of the pardon, and hence the Governor, in legal contemplation, had that in his mind when he granted the pardon. In other words, that the effect of a full pardon is to absolve the accused from prior convictions. We are not at all in accord with such position. The legal disabilities attached to a felony conviction, are all blotted out by the unconditional pardon. This fact remains even though the occasion for the assertion of such effect of the pardon, may not arise, and may not be usable by the pardoned person until long after the pardon is granted. The comprehension of the grant in no sense relates only to things that are past, but in every sense takes in all legal consequences of a conviction, no matter how far in the future they may lie. Nor can it be said that there is no distinction between the principle here announced and that arising in the Bennett case, supra. The fact of indictment or prosecution for a felony, is provable as affecting a man's credibility as a witness, regardless of his convic-

tion. The standing of a man in the community as a convict may be considered as affecting him in many ways, even though the legal consequences of his conviction may have been set aside by pardon.

We believe the principle announced in Sanders v. State, supra, is sound and applicable here. We are unable to see any difference in the point in that case and this. It follows that in our judgment the learned trial court was in error in allowing proof of the former conviction of this appellant, and in permitting same to be used to secure a greater penalty, when it was shown that he had been granted a full pardon therefor.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

### MODIFIED ASSENTING OPINION.

HAWKINS, JUDGE.—I hesitate to give complete assent to the views of my brethren and have not in my own mind at this time a sufficiently fixed opinion to justify a dissent. The near adjournment of the present term of court prevents a further investigation of the question now. That there exists an irreconcilable conflict in the holding of the courts of the various states upon the point decided is apparent from an examination of Ruling Case Law, Vol. 20, Section 41, etc., and from the authorities cited in briefs set out in Carlesi v. New York, 233 U. S. 51; 58 Lawyers Edition 843, and the notes under the decision in said case. If there be expressions in the language of my brethren which could be construed as questioning the authority of the Legislature to amend Article 62 of our Penal Code in order to provide enhanced punishment for a subsequent offense notwithstanding the granting of a pardon for a prior one I would regard it as in conflict with the opinion expressed by the Supreme Court of the United States in the Carlesi case (supra).

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Credit is due the counsel for the State for the zeal, research and thought exhibited in the motion for rehearing.

Concerning the question of law upon which the decision of the case turns, respected courts of last resort in other jurisdictions have announced conflicting views. In several states the decisions support with more or less cogency the claim of the appellant that because of the full pardon granted him of the prior offense his conviction of

that offense is not available to the State to enhance his punishment for the second offense. In other American jurisdictions the contrary is maintained. In some detail the conflict is discussed in the original opinion. The argument of counsel for the State has invoked our most careful re-examination of the subject, as well as the precedents and principles bearing upon the controversy.

The statute (Art. 64, P. C., 1925) covering the present appeal reads thus:

"A person convicted a second time of any offense to which the penalty of death is affixed as an alternative punishment shall not receive on such conviction a less punishment than imprisonment for life in the penitentiary."

In this state robbery is punished by confinement in the penitentiary for life or any term of years not less than five, and when the offense is committed by the use of a deadly weapon, the penalty of death may be assessed. Art. 1408, P. C.

It is pointed out by the attorneys for the State that in many of the judicial decisions concerning the effect of a pardon there is dealt with some civil right other than that of the liberty of the individual. In the case of Ex parte Garland, 4 Wallace 333, 18 L. Ed. 366, Garland, at the time of the Civil War, had sworn allegiance to the Confederate States and had been granted a full pardon by the President of the United States. Congress passed a law making it a condition precedent for a lawyer to practise in the Federal Courts to take an oath that he had not borne arms or aided, directly or indirectly, the Confederate States in the war. The Act of Congress was held unconstitutional. In the opinion of the Supreme Court of the United States the controlling principle is stated in the following words:

"The benign prerogative of mercy reposed in the President cannot be fettered by any legislative restrictions. * * * Such being the case, inquiry arises as to the effect and operation of a pardon, and on this point all of the authorities concur. A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full it releases the punishment and blots out all existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. * * * If granted after conviction, it removes the penalties and disabilities and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity."

Upon the soundness of the principle stated it is understood that the courts do not differ, but conceding the principle to be sound, the courts, as above stated, are at variance touching its application. Those courts which hold with the State in its present contention base their conclusions upon the principle that the heavier penalty is grounded upon the second offense only and that the courts may rightfully take into consideration the first offense notwithstanding the pardon for the purpose of showing the accused to be a persistent criminal. We understand the effect and interpretation of a pardon is to be determined by the rules governing the subject at common law. Such is the declaration in the text of Amer. & Eng. Ency. of Law, Vol. 24, p. 565, and notes citing the decisions of the courts of last resort of the United States and many of the states. Among them is Ex parte Wells, 18 Howard (U. S.) 367. From page 584 of the same volume of the text the following quotation is taken:

"An absolute pardon operates to prevent all further punishment for the offense for which it is given, to remove all penal consequences and disabilities incident to the conviction, and to create in the pardoned offender a new credit and capacity wholly unaffected by his crime."

It is stated in the text that there have been departures from the rule in some cases. However, Texas is among the states that have adhered to it. See Hunnicutt v. State, 18 Tex. App. 519; Carr v. State, 19 Tex. App. 660; Bennett v. State, 24 Tex. App. 79; Railway v. Howell, 30 S. W. 100. The subject is reviewed in the case of Sanders v. State, 108 Tex. Cr. R. 468, in which reference is made to many precedents. In Ruling Case Law, Vol. 20, p. 556, sec. 40, it is declared that the principles laid down by the English courts control the American courts in dealing with the subject. That such is the generally accepted interpretation of such a pardon is verified by the citation in the notes of numerous judicial decisions, including the declaration of the United States Supreme Court in Ex parte Garland, supra, from which quotation has been made above.

From the case of State of Ohio v. Martin, 43 L. R. A. 94, the following quotation is taken:

"The question presented by the exception is whether a former conviction and imprisonment for a felony, on account of which the governor has granted an unconditional pardon, may be regarded as one of the former convictions necessary to place the accused in the category of habitual criminals, as defined by the act. It may be that

the criminal habit is as certainly indicated by the commission of felonies for which unconditional pardons have been granted as by those whose penalties have been suffered to the end. But we must presume that the legislature enacted this section intending that the language should be construed according to the commonly received view as to the effect of a pardon."

The opposing view is set forth in the original opinion, quoting from the opinion of the Supreme Court of Kentucky as follows:

"The increased punishment prescribed by statute for the subsequent offense was no part of the penal consequences of the first offense, but applied exclusively to the last as aggravated by its repetition of the same crime."

On the very subject under consideration the reasoning of the Supreme Court of Virginia in the case of Edwards v. Commonwealth (78 Va. 39) seems, far more logical than those decisions holding that the conviction for the first offense has no part in the punishment but that the penalty is for the second offense alone. From the Virginia case, mentioned, reported in 49 Amer. Rep. 389, the following quotation is taken:

"By the pardon in question therefore the plaintiff in error was not only relieved of the punishment annexed to the offense for which he had been convicted, but of all penalties and consequences, except political disabilities, growing out of his conviction and sentence. One of those consequences was the liability to which it subjected him to receive the additional punishment prescribed by the statute, in case he should be afterward sentenced to the penitentiary in this State. And that additional punishment has been imposed in this case, not by reason of the sentence for the second offense alone, but in consequence of that sentence and the sentence in the former case. Both causes must exist together to produce the effect contemplated by the statute; in the absence of either, no case is made for the imposition of the additional punishment the statute prescribes. But as the first offense was in legal contemplation blotted out, and its consequences removed by the pardon of the governor, it must be regarded, for the purposes of this case, as though it had never been committed. It follows therefore that the judgment of the Circuit Court, sustaining the demurrer to the prisoner's plea, is erroneous and must be reversed."

The prior conviction cannot be obliterated. It remains a fact despite the pardon. Its use against the accused as a potential fact in his trial for a subsequent like offense can be obviated and we

think is precluded by the pardon. To the writer the reasoning of the Supreme Court of Virginia quoted above seems to give effect to the interpretation of a pardon at common law, which in passing the statute upon which the conviction rests, the legislature is presumed to have intended to follow. Moreover, the application of the opposite rule would subject one unjustly convicted, who was pardoned, on a subsequent trial to a conviction and enhanced punishment notwithstanding his innocence of the first offense and his pardon therefor. Such effect we think was not intended by the Legislature in the passage of the law.

For the reasons stated, we are constrained to overrule the State's motion for rehearing.

*Overruled.*

ON STATE'S APPLICATION TO FILE SECOND MOTION FOR REHEARING.

MARTIN, JUDGE.—Appellee presents an application to file a second motion for rehearing. The substance of its complaint seems to be that since the court failed to discuss the Carlesi case, 233 U. S. 843, 58 L. Ed. 51, in its opinion on motion for rehearing, that this court intends to overrule same, or at least refuses to follow it. The court, speaking through Justice Lattimore in its original opinion herein, discusses the Carlesi case, supra, in language which we think is plain and unmistakable, and which made unnecessary any further reference to same in the court's opinion on motion for rehearing. Our construction of such case is not, in our opinion, susceptible of the interpretation now attempted to be placed on it by the State. We deem it useless to reiterate what seems already to have been clearly stated.

The motion is denied.

*Application denied.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

DISSENTING OPINION.

HAWKINS, JUDGE.—My brethren adhere to the conclusion reached in the original opinion. Two lines of authorities are referred to in the opinion on rehearing. I am inclined to follow those which lead to a conclusion contrary to that entertained by a majority of the court.