IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 2000 Session

# JEROME STREETER v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 97-2605-II     Carol L. McCoy, Chancellor**

---

### No. M1999-02267-COA-R3-CV - Filed August 31, 2000

---

A prison inmate claimed that he was entitled to be released, because he had earned the required sentence reduction credits. The Department of Correction disagreed. The trial court granted summary judgment to the Department on the basis of laches. We affirm the trial court's judgment, but upon a different basis.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Jerome Streeter, Mountain City, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; and Pamela S. Lorch, Assistant Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

### I. SENTENCE REDUCTION CREDITS

In 1974 Jerome Streeter was convicted of murder and of multiple armed robberies. He received a 75-year sentence for those crimes. At the beginning of the sentence, the Tennessee Department of Correction (TDOC) calculated the earliest date he could be deemed to have completed it, by applying to his 75-year sentence all the good and honor time that could possibly be awarded for good behavior under the laws in effect at that time. The result was a presumptive sentence expiration date in the year 2012 instead of the year 2049.

The sentence expiration date could be further shortened by the application of incentive credits, which were granted for participating in educational programs or for satisfactory performance

in job placements. Disciplinary infractions in any given month could result in an inmate losing the incentive credits he might otherwise be entitled to earn that month. Of course another result of disciplinary infractions would be the loss of good behavior credits that were already built into the inmate's sentence.

In 1980 and 1981 the system for earning sentence reduction credits was changed. Good and honor time was replaced by Good Conduct Sentence Credits, with all good and honor time earned prior to July 1, 1981, proportionally converted to Good Conduct Sentence Credits. Incentive credits were replaced by Prisoner Performance Sentence Credits. These were not only changes of terminology, but changes in the manner and rate at which prisoners might earn credits to reduce their sentences.

Another change that occurred in the calculation of sentence credit was the Department's conversion to the use of computers for record-keeping. Before this conversion, job supervisors reported program credits to institutional records clerks, who entered the information onto cards kept in the inmate's file. This information was forwarded to TDOC's Central Office on a monthly basis, where employees manually adjusted sentences to reflect the newly-earned credit. The updated sentence information was available to inmates upon request to their counselors.

In 1978 the Department implemented the Offender Based Computer Information System (OBCIS). Each inmate's sentence information was entered into the new system, and checked for accuracy against his file. After it became effective, the cards containing sentence credit information were destroyed. It appears from the arguments presented in this case that only the number and type of sentence credits earned was entered into OBCIS, not the reasons that an inmate failed to earn the maximum possible amount.

Under OBCIS, the records clerk at each institution would input the sentence credits earned by each inmate directly into the system on a monthly basis. Inmates were furnished with monthly printouts which set out their updated release eligibility and expiration date information.

In 1992 the Department converted from OBCIS to the current system, the Tennessee Offender Management Information Management System (TOMIS). Sentence credits recorded under OBCIS were downloaded into TOMIS. Program participation credits earned by inmates are entered into TOMIS on a monthly basis by inmate job supervisors and/or record clerks, and updates are furnished to inmates on a quarterly basis.

## II. THE LAWSUIT

In March of 1997 Mr. Streeter filed a Petition for a Declaratory Order with the Department of Correction, alleging that the Department had miscalculated his sentence expiration date. In a letter dated May 27, 1997, the Department denied his petition, and recited that Mr. Streeter had earned 2604 Prisoner Performance Sentence Credits, but had lost 240 good conduct days through disciplinary infractions, for a then current expiration date of March 12, 2006.

Mr. Streeter then filed a Petition for Review in the Chancery Court of Davidson County, asking the court to order the Department of Correction to recalculate his sentence credits, and thereafter to order his immediate release, because (he contended) correct calculations would reveal that his sentence had already expired.

The Department filed a Motion to Dismiss the petition for failure to state a claim upon which relief can be granted. *See* Rule 12.02(6), Tenn. R. Civ. P. The affidavit of TDOC sentence analyst Candace Whisman was filed in support of the motion. Her affidavit tracked the changes in the laws involving sentence credits which affected Mr. Streeter. Attached to the affidavit were worksheets containing a monthly breakdown of the incentive credits and prisoner performance sentence credits earned by Mr. Streeter, and a manual calculation which applied these credits, as well as the 240 days of good conduct credits lost because of disciplinary infractions, to the presumptive expiration date on his 75-year sentence.

Because of the affidavit, the court treated the Motion to Dismiss as a Motion for Summary Judgment. *See* Rule 12.02, Tenn. R. Civ. P. The court granted summary judgment to TDOC on May 4, 1998, because the petitioner failed to respond to the motion. *See* Rule 56.05, Tenn. R. Civ. P. Mr. Streeter subsequently filed a Motion for Relief from Judgment Due to Inadvertence, Mistake or Excusable Neglect. He claimed that he had inadvertently mailed both copies of his response to opposing counsel rather than to the chancery court, and supported this claim by documentation from the prison mail room, which indicated that he had sent legal mail to the assistant attorney general during the relevant time frame.

The trial court granted the Motion for Relief from Judgment, and Mr. Streeter filed a response in which he discussed the general principles applicable to summary judgments, and quoted an opinion of this court, *Jones v. Reynolds*, No. 01A01-9510-CH-00484 (Tenn. Ct. App. at Nashville, July 2, 1997) in which we discussed the numerous opportunities for error in the calculation of sentence credits.

But the largest portion of his response was devoted to an argument that was not part of his original complaint: that he was entitled to be re-sentenced for his crime under the more lenient standards established by the Criminal Sentencing Reform Act of 1989. Of course this court has ruled on numerous occasions that prisoners sentenced prior to the effective date of the Sentencing Reform Act were not entitled to be re-sentenced under its provisions. *See Burch v. Tenn. Dept. of Correction*, 994 S.W.2d 137 (Tenn. Ct. App. 1999).

Mr. Streeter subsequently filed a Motion for Leave to File Amended Complaint, which the trial court granted. The Department filed a Motion to Dismiss the Supplemental Complaint or Alternatively for Summary Judgment, supported by a memorandum, by the re-filed affidavit of Candace Whisman, and by the affidavit of Faye Claud, Manager of Sentence Information Services for the Tennessee Department of Correction. Attached to Ms. Claud's affidavit were departmental records regarding eleven infractions of prison rules for which Mr. Streeter was disciplined between

1979 and 1997. On June 29, 1999, the trial court granted summary judgment to the defendant on the basis of laches.

The court reasoned that insofar as Mr. Streeter was seeking redress for alleged errors as much as twenty years old, the State was prejudiced by his delay in calling these alleged errors to the attention of the authorities. The court further held that an inmate wishing to challenge an erroneous sentence credit calculation had to do so in a reasonable time, and stated that "six or eight months from the reception of an erroneous calculation is deemed a reasonable time period for the inmate to claim the discrepancy occurs."

On September 22, 1999, Mr. Streeter filed a Motion for Delayed Appeal, claiming that he did not receive the court's summary judgment order until September 15, 1999. He again relied upon an affidavit and documentation from the prison mail room, where all incoming and outgoing legal mail is posted in a log. The court subsequently vacated its summary judgment order under Rule 60.02, Tenn. R. Civ. P., and re-entered it on January 4, 2000. Mr. Streeter filed a timely notice of appeal from this judgment.

### III. THE APPEAL

Mr. Streeter has consistently claimed that he has not received all the sentence credits he is entitled to, but his grounds and argument have changed with each new pleading or motion. Since the trial court dismissed his Amended Complaint on summary judgment, we need only address the arguments presented in that complaint and in his appeal briefs.

It appears that the argument in Mr. Streeter's amended complaint was primarily based upon the destruction of the sentence credit cards following the implementation of OBCIS. Mr. Streeter argued that TDOC was obligated to fully document all disciplinary infractions that resulted in a loss of sentence credits, and that any failure to meet those obligations would result in a presumption that the inmate involved had earned the maximum number of sentence reduction credits possible.

In support of this argument, he relied upon the case of *State ex rel Johnston v. McClellan*, 87 Tenn. 52 (1888), which involved the implementation of an 1885 "good time" statute. The Supreme Court held that the question of how much good time an inmate had earned could not depend solely on the memory of the warden, but required the keeping of a written record:

> "It is the duty of the Superintendent to keep, or have kept under his vigilant personal supervision, the record directed to be kept by the statute, and if he fails to keep it the prisoner's right shall not be left to the uncertainty of treacherous memories and oral testimony. In the absence of the record to the contrary, it will be conclusively presumed that he is entitled to the good time."

87 Tenn. at 57.

In the present case, however, the Department is not relying upon one individual's memory alone to establish the proper number of sentence credits the appellant is entitled to, but upon departmental computerized records that are in part derived from an earlier manually-kept record, and in part by contemporaneous entries made within the regular course of the department's business. Therefore it does not appear to us that the presumption discussed in *McClellan* applies.

We note that the only evidence Mr. Streeter presented to refute the affidavits of Ms. Whisman and of Ms. Claud, was his own affidavit, with a worksheet he prepared containing his own manual calculation of the number of credits he was entitled to. Mr. Streeter did not even claim that he participated in any particular education programs or job placements prior to the implementation of OBCIS, but simply attempted to rely on the presumption discussed above.

The standards for summary judgment place the initial burden of proof on the proponent of the motion, to present evidence which indicates that there are no material facts in dispute and that it is entitled to judgment as a matter of law. Rule 56.03, Tenn. R. Civ. P. Once that burden is met, however, the burden shifts to the non-moving party to produce countervailing evidence that would establish a genuine factual dispute. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). ". . . [P]arties facing a summary judgment motion cannot rest on the mere allegations or denials in their pleadings but rather must respond with appropriate evidentiary materials demonstrating that there is a genuine issue for trial." *Bradley v. McLeod,* 984 S.W.2d 929 (Tenn. Ct. App. 1998). Rule 56.05, Tenn. R. Civ. P.

Mr. Streeter's affidavit merely repeats the allegations of his complaint and amounts to a general denial of the evidence presented by the Department. We find that it is not sufficient to withstand the defendant's Motion for Summary Judgment, and we affirm the judgment of the trial court.

In his briefs on appeal, Mr. Streeter argued that the trial court erred in granting the Department summary judgment on the basis of laches. He claimed that since TDOC itself destroyed the manual records, any prejudice it may have suffered thereby resulted from its own actions, and therefore laches did not apply. But since we have found that even in the absence of the original records, the evidence presented by the Department was sufficient to sustain a Motion for Summary Judgment, we need not decide here whether laches can be an appropriate defense in a suit involving a grant or denial of sentence credits that is remote in time.

## III.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Jerome Streeter.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.