GILLIAM *v.* STATE.

(*Nashville*, December Term, 1938.)

Opinion filed April 1, 1939.

H. B. Weimer, of Nashville, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Chief Justice Green delivered the opinion of the Court.

The defendant was convicted of housebreaking and larceny, the jury finding him guilty and assessing his punishment "at confinement in the Tennessee State penitentiary for a period of not more than three years." The judgment of the criminal court then recites "it is therefore ordered that the above sentence be transferred to the County Workhouse and that the defendant for his said offense shall be confined to the County Workhouse for a period of three years, commencing on the date of his delivery to the keeper thereof, subject to the rules and regulations of said institution . . . that he pay the costs of this prosecution or that he by his labor pay the same at the rates of labor allowed by law, subject to the rules and regulations of said institution."

His motion for a new trial being overruled, the defendant appealed in error to this court. No bill of exceptions was preserved and the facts of the case are not before us. The assignments of error are directed to the propriety of the action of the court below in "transferring the sentence" from the penitentiary sentence fixed by the jury to a sentence in the county workhouse.

The order of the court committing defendant to the county workhouse is based on section 11793 of the Code, as follows:

"In all cases where any person shall be convicted of a felony, and the jury trying the case shall be of the opinion that the offense merits a punishment of five years or less, the court, in its discretion, may order said person confined in the county workhouse for the term of such sentence, provided that the trial judge shall have the power to order the removal of the prisoner from the county workhouse to the penitentiary whenever in his opinion they are being treated in a brutal or inhuman manner, or when it shall appear to him that the physical condition of the prisoner is such that working on the roads is deleterious to his health."

Counsel for the defendant calls attention to chapter 89 of the Public Acts of 1931, carried into Williams' Tennessee Code at section 12209.1 *et seq.*, and at section 12209(1) *et seq.*, of Michie's Tennessee Code of 1938. This statute provides that the wardens of the State penitentiary and the Brushy Mountain penitentiary shall keep a correct record of the conduct of each inmate and under rules and regulations prescribed by the Commissioner of Institutions establish grades of the inmates, and continues:

"Each convict who shall demean himself uprightly shall have deducted from the time for which he may have been sentenced, one month for the first year, two months for the second year, three months for each subsequent year until the tenth year inclusive and four months for each remaining year of the time of imprisonment. This shall apply to prisoners in confinement or on parole therefrom." Section 1.

A subsequent section of the statute provides that the Commissioner of Institutions shall have the right and power to establish an honor grade in which convicts shall be placed on certain conditions and that so long as any prisoner who is placed on the honor grade remains there, he shall, in addition to good time allowed him by the statute, have deducted from the time for which he may have been sentenced two months for each year of his term of imprisonment or the fractional part thereof.

Legislation similar to the Act of 1931 has been on our statute books since chapter 59 of the Acts of 1869-70. This legislation has been upheld and this court has declared that an Act of the Legislature, in existence at the date of the judgment against the convict, specifically defining credits for good conduct, ''becomes a part of the sentence, and inheres into the punishment assessed.'' And again, following the Supreme Court of California in *Ex parte Wadleigh*, 82 Cal., 518, 23 P., 190, ''In the opinion of the court the statute simply fixed the term of imprisonment in certain cases and upon certain conditions, and this provision entered into and became a part of the judgment of the court below.'' *Fite* v. *State ex rel.*, 114 Tenn., 646, 648, 88 S. W., 941, 943, 1 L. R. A. (N. S.), 520, 4 Ann. Cas., 1108.

Counsel for defendant submits that under the judgment of the court transferring this three-year sentence to the county workhouse defendant will be deprived of all allowances for good conduct and of the privilege of being placed on the honor grade, since no duty is placed by law upon the superintendent or other official of the county workhouse to keep a record of his conduct, etc.

If, as stated by the court in *Fite* v. *State ex rel., supra,* the specific credits provided by statute for good conduct of a defendant sentenced to the penitentiary enter into the judgment and becomes part of the sentence, it would be a hardship to deprive him of these credits. Previous legislation having confided to the jury the power to fix maximum sentences (Code, section 11766), we think it was not the intention of the Legislature by section 11793 of the Code to confer upon the judge the power of lengthening sentences by changing the place of imprisonment from the penitentiary to a county workhouse.

It is apparently true that the law has not placed upon any county official the duty of keeping a record of the conduct of workhouse prisoners. The workhouse commissioners and the superintendent, however, are required to keep other records, Code, section 12017 *et seq.,* and an additional record as to the conduct of prisoners such as the defendant could easily be preserved under the rules in force at the State prisons.

In *State ex rel.* v. *McClellan,* 87 Tenn., 52, 9 S. W., 233, considering chapter 59 of the Acts of 1869-70 heretofore referred to, the court held where the superintendent of the penitentiary had neglected to keep a good time account of the prisoners, it would be conclusively presumed that the prisoner's conduct was unexceptionable and that he was entitled to full benefit of good time credits.

In the enactment of section 11793 of the Code authorizing the transfer to the county workhouse of prisoners given a sentence of five years or less, the Legislature overlooked any provision requiring workhouse officials to keep a record as to the conduct of such prisoners. There is certainly, however, nothing in this legislation to forbid the workhouse officials from keeping such a

record. If no such record is kept, then we think under the authority of *State ex rel.* v. *McClellan, supra,* the conduct of prisoners sentenced to the penitentiary and transferred to the workhouse should be presumed to be good. We cannot believe that the Legislature intended to bring about any lengthening of the terms of prisoners under a penitentiary sentence in authorizing the transfer of these prisoners to the county workhouse.

Whether after receiving proper credit for good conduct on his sentence, and after the sentence has expired, defendant can be retained in the workhouse to work out the costs of his case is a question that is not yet before us and may never arise.

The judgment of the court below committing the defendant to the county workhouse is affirmed, but the defendant will be entitled to good time allowances as if serving his sentence in the penitentiary as well as parol by the Commissioner of Institutions under section 11771 of the Code, except that he appears to have received the minimum sentence provided for his offense.