JOE LEE THOMAS

*v*

STATE OF TENNESSEE

(*Nashville,* December Term, 1956)

Opinion filed April 1, 1957.

Phil M. Howse, Jr., Nashville, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is an appeal from a conviction of (1) grand larceny (stealing an automobile), (2) driving recklessly and heedlessly in violation of the statute, T.C.A. sec. 59-858,

and (3) leaving the scene of an accident in which the defendant was involved. The three indictments, charging the foregoing specific offenses, were jointly tried by consent of counsel.

The assignments of error complain of the insufficiency of the evidence to sustain the verdict; that the defendant was incapable of having any felonious intent to commit the crime of larceny due to excessive intoxication; that he was the victim of amnesia and had no recollection of having committed any crime.

Finally it is insisted that the trial judge erroneously charged the jury on the question of drunkenness as a defense to the charge of larceny, and also his refusal to charge two special requests to correct the erroneous charge as aforesaid.

On January 3, 1956, Robert A. Ryman parked his car on Ninth Avenue, North, in the City of Nashville, leaving the switch key in the parked car. He entered a residence nearby to pick up some articles for dry cleaning. When he had returned a few minutes later his car was gone. But shortly after missing it he saw it being driven back up the street by an unknown person. He at once notified the police. Later on, and within less than an hour, this car was wrecked on the Dickerson Road by the defendant, Joe Lee Thomas, who was seriously injured.

No question is made as to the defendant being the person who took the car on Ninth Avenue, North. The only defense made is that he was drunk and had amnesia at the time of the taking, and for some days prior thereto, and that he was oblivious to what he was doing.

Contention is made (1) that there is no evidence to sustain the verdict of the jury; and (2) that the verdict is contrary to the law and the evidence.

The evidence bearing upon the extent of defendant's intoxication, and his amnesia is not contradicted. It is shown by the testimony of Mrs. Thomas, wife of the defendant, to whom she was married in December, 1952, that she later gave birth to a child at General Hospital in June, 1955, which was supposed to be "still born". The defendant told her it was still born, but in fact it lived about 25 minutes. She testified that this so worried him that he drank to excess "to try to forget it"; that he drank to excess for several days prior to the day of the alleged larceny of this car; that after the coming of this baby in June there was a change in his mental condition and conduct, although he was working as a driver for Red Top Cab Company. He was drinking to excess on December 31st and up to and including January 3rd when he took Mr. Ryman's car. He drove the car by home in the late afternoon on that day stating "that a friend had loaned him the car". He was "very drunk". Mrs. Thomas further testified that after the accident he could remember nothing about it.

Dr. Arnold M. Meirowsky, testified by deposition in which he submitted a written finding as to the defendant's condition when he was brought to the hospital. Of course, he was at that time unconscious. This finding is as follows:

"Neurosurgical re-examination today, on request of patient's attorney, Mr. Philip M. House, Jr.

"Patient is alert, oriented, cooperative and friendly.

No impairment of internal or external speech. Patient has a retrograde amnesia which is complete back to Thanksgiving. His memory is spotty for the period, September-Thanksgiving. He has full recollection of everything that has occurred in his life prior to September, 1955. He has an amnesia for the accident and an amnesia for the first few days at Mid State Baptist Hospital. He does not recognize this examiner."

The defendant has no criminal record. He is shown to be a young man of excellent reputation.

The determinative issue before us is the question of "intention", or lack of intention to commit a criminal offense. While this is primarily an issue for the jury it is important that we give consideration to the applicable rule of law in the instant case to determine if the court's charge was erroneous. Following the trial judge's definition of larceny he gave the following instructions:

"The fact that a person is drunk and steals something; that is not a defense to larceny in Tennessee. In only one instance is that applicable, that is in cases of murder in the first degree to a person being so drunk that he does not know what he is doing to the extent that he is incapacitated from premeditation, which is an essential part of murder in the first degree in Tennessee, would reduce the crime from murder in the first degree to a lesser degree; and our Supreme Court of Tennessee held that a person so drunk as to be incapable of premeditation that he would not be guilty of murder in the first degree but the effect would be to reduce it to murder in the second degree; but that law

is not applicable to a case of larceny. So the fact that a person is drunk is not a defense to the crime of larceny, grand or petit."

The foregoing is all that the learned judge said to the jury on this subject. It is a correct statement of the law as applicable to the crime of larceny.

The defendant's counsel, at the conclusion of the general charge, tendered the following special requests:

"If the criminal intent is absent in the taking of the prosecutor's car by the defendant, because of the amnesia of the defendant, before and at the time of the offense, or the defendant was too drunk when he committed the act to entertain the specific intent, essential in order that the act constitute the particular offense, and did not first form such intent, and then became intoxicated and such intent did not exist at the time of the taking, or that the defendant has established a reasonable doubt in the minds of the jury, then the jury should give the defendant the benefit of such doubt and verdict of 'not guilty' should be returned by the jury in the taking of said auto."

■ The foregoing special request was properly refused because *there is no evidence as to the effect of amnesia upon the mind of the accused.* The opinion of Dr. Meirowsky, quoted herein, that the defendant was an amnesic victim, did not advise the court and jury as to whether or not he knew right from wrong.

■ There is some evidence that the defendant became despondent after the birth of his child and drank whiskey to excess. While it may be true that drinking to excess may cause lapse of memory, as argued by counsel, yet it is no defense to a criminal act.

██ The second special request duly tendered challenges the correctness of the general charge in that it was insufficient as to felonious intent, due to "amnesia, insanity or any other condition". We think the request was properly refused for reasons heretofore stated in this opinion.

Considering further the insistence that the defendant was too drunk to form any criminal intent to steal, the applicable rule is well stated in 23 Am.Jur. (Larceny), Section 42, page 939, as follows:

"That the accused may have been drunk, in the ordinary sense of that word, is not sufficient. He must have been so drunk as to be incapable of forming the intent to steal, or, as otherwise expressed, incapable of consciousness that he is committing a crime or of discriminating between right and wrong. If this fact does appear, however, or if there is a reasonable doubt that he was capable of forming or entertaining the necessary felonious intent, he is not guilty of larceny, unless the intent to steal was formed while still in possession of his reasoning powers."

The charge of the court was in substantial accord with the foregoing statement of the rule. The wife testified "he was very drunk." But she failed to state the degree of intoxication. Moreover he was not so under the influence of liquor as to deter her from taking a pleasure ride with him at that time.

Adverting to the question that the defendant was a victim of amnesia and was addicted to the excessive use of whiskey at the time he committed this crime, since

there is no evidence as to the effect of amnesia upon the defendant's mind, the defense is not available any more than that of drunkeness.

The subject of amnesia in all its aspects is fully discussed in Attorneys' Textbook of Medicine, 3d Ed., by Gray. Beginning at paragraph 96.01 it is said:

"Amnesia, loss of memory, may lead to crimes entirely unknown to the culprit at a later date. That is rare. More frequently, an accused, remembering full well what he has done, alleges amnesia in false defense. He is a malingerer. To prove his innocence or guilt may be most difficult.

"The plots of many novels are based upon amnesia of complex type. The hero or heroine is described as long living a life entirely apart from their true identity. Having all their faculties except a recollection of the past before some fateful day, the story is unfolded usually in close proximity to places and people with whom the individual associated in the past, permitting amusing and hazardous escapes from identification. This goes on for years, with dramatic return to normalcy in the end.

"There is little reason to believe in real life that such may happen.

\* \* \* \* \* \* \*

"The accused may feel with some logic the unfairness of trial for an act he does not remember. His attorney may plead temporary insanity. Medicolegal study is then required to determine the degree of mentality. McNaughten's rulings prescribe the accused can be found guilty but insane at the time of a crime in the

event he did not know the nature and quality of his action, or that it was wrong. Failure to remember later, when accused, is in itself no proof of the mental condition when crime was performed. An accurate understanding of amnesia is necessary to consider the degree of knowledge possessed by the accused at a specified time in the past."

█ It thus appears from the foregoing authority that amnesia, in and of itself, is no defense to a criminal charge unless it is shown by competent evidence that the accused "did not know the nature and quality of his action and that it was wrong."

█ Upon the entire record, and for reasons stated herein, the assignments of error are overruled and the judgment below is affirmed. However, we are remanding the case with the direction that the defendant's sentence be served in the Davidson County Workhouse, as provided in Section 40-3105, T.C.A. We are making this disposition of the case to enable the defendant to undergo an examination by a competent medical authority to determine the effect of amnesia upon the mind of the defendant, that is, "did he know right from wrong?" This important phase of the case was not developed in the trial court. As the record now stands the evidence does not preponderate in favor of the defendant's innocence. If, however, an examination of the defendant shows that he is the victim of some mental disorder, he would be entitled to executive clemency.

█ Under the Code Section above referred to the trial judge may, in his discretion, order that the defendant be confined in the workhouse instead of the penitentiary.

The question was settled in *Gilliam v. State,* 174 Tenn. 388, 126 S.W.2d 305, opinion by Chief Justice Green, wherein it was held:

  "A defendant whose punishment for housebreaking and larceny was assessed by jury at confinement in penitentiary for not more than three years could be committed to county workhouse by trial court, but he could not thereby be deprived of good conduct allowances".

The foregoing opinion clearly overrules a former opinion, *West v. State,* 140 Tenn. 358, 204 S.W. 994, opinion by Mr. Justice Fentress. We hold that it is overruled.

The case is accordingly remanded with instructions.