356 P.2d 20

**STATE of Arizona, Plaintiff,**

**v.**

**Albert D. THOMAS, Defendant.**

**No. 1170.**

Supreme Court of Arizona.

Oct. 19, 1960.

Rehearing Denied Nov. 15, 1960.

Wade Church, Atty. Gen., Lloyd C. Helm, County Atty. of Cochise County, Bisbee, for plaintiff.

Carl D. Hammond, County Atty. of Mohave County, Kingman, Bill Helm, County Atty. of Yuma County, Yuma, Charles C. Stidham, County Atty. of Maricopa County, Phoenix, amici curiae.

Harry Ackerman, County Atty. of Pima County, Tucson, James Boyce Scott, County Atty. of Greenlee County, Clifton, intervenors.

Flynn & Allen, Phoenix, for defendant.

LEE GARRETT, Superior Court Judge.

Defendant, Albert D. Thomas, was tried upon an information charging him with murder in the first degree. He was charged and tried jointly with his wife, Ellora Thomas. The jury returned a verdict of "not guilty" as to the wife, and "guilty" of manslaughter as to the defendant. Defendant appealed from the judgment rendered against him, and from the whole thereof, and from the order denying a new trial. On appeal, the judgment was reversed and the case remanded for a new trial. State v. Thomas, 86 Ariz. 161, 342 P.2d 197.

The case was set for trial de novo and defendant timely moved under A.R.S. § 13–145, to quash the information charging murder in the first degree, contending that he had been fully tried on the charge of murder in the first degree, and that, by the jury's finding him guilty of manslaughter, he had been conclusively found not guilty of murder either in the first or second degree.

The trial court was of the opinion that the basic question raised was so important and doubtful as to require a decision of this court before placing defendant on trial for his life. With the consent of the defendant, the matter was certified to this court under Rule 346, Rules of Criminal Procedure, A.R.S., Vol. 17. The question certified is:

*"Where a defendant has been convicted of the crime of manslaughter under an information charging him with murder in the first degree and said conviction for the crime of manslaughter has been reversed on appeal and a*

*new trial ordered, would a second trial under the same information charging murder in the first degree place the defendant twice in jeopardy for the same offense (murder) in violation of the Fifth Amendment to the Constitution of the United States, or Article 2, Section 10, of the Constitution of Arizona."*

This raises the question of a possible violation of the Fifth Amendment to the Federal Constitution, as well as a possible violation of Article 2, Section 10 of the Constitution of the State of Arizona, A.R.S.

The applicable portion of the Fifth Amendment to the Constitution of the United States reads as follows:

"* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * *."

Article 2, Section 10, of the Constitution of the State of Arizona reads as follows:

"No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

▮ In our consideration of the "double jeopardy" provision of the Fifth Amendment to the United States Constitution, a review of the United States Supreme Court cases shows that the first ten amendments of the Constitution are directed toward the Federal Government and have no direct application to the states. Barron for Use of Tiernan v. Mayor and City Council of City of Baltimore, 7 Pet. 243, 32 U.S. 243, 8 L.Ed. 672; Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97. However, some of the more basic rights contained in the first ten amendments have been held to be applicable to the states, through the requirements of "due process" of the Fourteenth Amendment. In Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, the question arose as to whether double jeopardy was such a basic right as to be a requirement of due process. The court held it was not, and that a state could enact a statute allowing the prosecution to appeal in a criminal case and due process would not be violated by such a statute.

▮ From this it appears the states are left to withhold from their residents the plea of double jeopardy in some cases, and nothing in the Constitution of the United States is violated so long as due process is otherwise satisfied. In Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed. 2d 199, the Supreme Court held a new trial in Federal District Court on first degree murder would violate the Fifth Amendment after the defendant had successfully appealed his conviction of second degree murder. This ruling however has no direct effect on the states, since in the Palko case, supra, it was held they may provide "due process" though the state is allowed an appeal and a

new trial. If the states are unrestricted to this extent, then surely they may interpret their own constitutional provisions on double jeopardy despite the Green case, supra. The Green case contains an excellent discussion of the interpretation of the Fifth Amendment of the United States Constitution, but that case is not controlling over the states, and each state may determine the scope of its own double jeopardy provision, if one is provided.

The provision contained in the Constitution of Arizona, Article 2, Section 10, against twice putting a person in jeopardy is, of course, the supreme law of this state and any statute or rule of court which violates this constitutional provision must fall. However, the provisions of our Constitution are subject to interpretation by this court, as are our rules and statutes.

In the case of Territory of Arizona v. Dorman, 1 Ariz. 56, 58, 25 P. 516, 517, the court held:

"* * * that when a conviction has been had in a criminal case, and judgment has been rendered, and the judgment is reversed on application of the accused, on the ground of error at the trial, he is not shielded by the constitutional provision cited from being tried anew for the same offense; in fact, that no trial such as the law contemplates has been had, and that he has not been in jeopardy in the sense in which the term is used in the constitutional provision cited."

This case, however, was decided before our Constitution was adopted, and was decided under the Fifth Amendment to the Constitution of the United States. There are no other Arizona cases dealing with the question under consideration here. Other states that have passed on the point are evenly split. Green v. United States, supra, Footnote 4 of dissenting Opinion.

■ Rule 314, Rules of Criminal Procedure, A.R.S. Vol. 17, 1956, provides:

"When a new trial is granted, the new trial shall proceed in all respects as if no former trial had been had. On the new trial the defendant may be convicted of any offense charged in the indictment or information regardless of the verdict or finding on the former trial. The former verdict or finding shall not be used or referred to in evidence or argument on the new trial."

This rule, in substance, has been a part of the laws of this state, either adopted by the Legislature or promulgated by this court since 1864, except for a short period of time between the years 1887 and 1901. Compiled Laws of Arizona, 1864–1871, Chapter XI, Sections 408 and 414; Compiled Laws of Arizona, 1877, Chapter 11, Sections 408 and 414; Revised Statutes of Arizona, 1901, Criminal Procedure, Chapter VI, Sections 984, 986, and 987; Session

Laws of Arizona, 1912, Chapter 35, Sections 67 and 987; Revised Statutes of Arizona, 1913, Penal Code, Sections 1102, 1103, and 1104; Revised Code of Arizona, 1928, Sections 5095 and 5096; Arizona Code Annotated, 1939, Section 44–2008; and see Revised Statutes of 1887, Penal Code, Section 1758.

We hold this rule to be valid and constitutional, and follow and reaffirm our holding in Territory of Arizona v. Dorman, supra. We therefore conclude that the answer to the certified question is No.

STRUCKMEYER, C. J., and PHELPS and UDALL, JJ., concur.

NOTE: JOHNSON, J., having disqualified himself, the Honorable LEE GARRETT, Judge of the Superior Court of Pima County, Arizona, was called to sit in his stead and to participate in the determination of this appeal.

BERNSTEIN, Justice (dissenting).

I dissent from the decision of the majority.

I agree that the issue here presented does not raise a question of Federal Constitutional law. In Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, the Supreme Court of the United States held that a Connecticut statute permitting the state to appeal in a criminal case does not so "violate those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'" as to infringe the "due process" clause of the Fourteenth Amendment to the Constitution of the United States (302 U.S. at page 328, 58 S.Ct. at page 153).

The Palko case did not purport, however, to construe the "double jeopardy" clause of the Fifth Amendment to the Constitution of the United States or similar provisions of state constitutions. Nor was there any intention, by this exercise of Federal judicial self-restraint, to limit the states to striking down as violative of their own constitutions only what subjects an individual to "a hardship so acute and shocking that our polity will not endure it" (Palko v. State of Connecticut, supra, 302 U.S. at page 328, 58 S.Ct. at page 153). Under our federal system the states no less than the Federal Government are guardians of the rights of the people.

The question is whether a retrial of defendant Thomas for the crime of murder violates the Arizona Constitution, and particularly Article II, Section 10, thereof:

"No person shall * * * be twice put in jeopardy for the same offense."

In Territory of Arizona v. Dorman, 1 Ariz. 56, 25 P. 516, a judgment convicting defendant of murder was set aside with direction for a new trial. This Court there ruled that the defendant could be tried again

for the crime of which he had been *convicted,* and not, as here, for a crime of which the jury had failed to convict him.

The issue thus presented herein has not been previously determined by this Court. Other jurisdictions have considered this problem and have virtually split in result. These authorities are collated in Green v. United States, 355 U.S. 184, 216–218, 78 S.Ct. 221, 2 L.Ed.2d 199, footnote 4, which shows that of the thirty-six states which had then considered the question, nineteen permitted retrial of the defendant for the greater offense, while seventeen states held such retrial to be a violation of their double jeopardy provisions. See also Annotation, 61 A.L.R.2d 1141.

In the Green case, supra, the Supreme Court of the United States, in a five-to-four decision, held that a retrial, similar to that sought in the instant case, violates the double jeopardy clause of the Fifth Amendment to the Constitution of the United States. Since that decision in December 1957, two states, listed in footnote 4 of the Green case as permitting retrial for the greater offense, have adhered to that position (Blanton v. Commonwealth, Ky., 320 S.W.2d 626; People ex rel. Hetenyi v. Johnston, 10 A.D.2d 121, 198 N.Y.S.2d 18); two other states similarly listed have since held, in reliance on the Green case, that such a retrial violates their double jeopardy provisions (State v. Schoel, 54 Wash.2d 388, 341 P.2d 481; State v. Williams, 30 N.J.

105, 152 A.2d 9); and one state, overruling prior decisions permitting a retrial in certain circumstances, has adopted the Green rule in full (Gomez v. Superior Court, 50 Cal.2d 640, 328 P.2d 976).

Although the rule forbidding a retrial of the greater offense is now followed in a majority of the jurisdictions which have considered this question, that alone is not persuasive. Our duty is to adopt that rule which "best serves the rights and liberties of the people" of our State (State v. Williams, supra, 152 A.2d at page 13). The majority opinion fails to consider that objective.

In the instant case defendant Thomas was tried on a charge of murder in the first degree. Under our procedure the jury was instructed to determine, first, whether the defendant was guilty of murder in the first degree; if not, then murder in the second degree; and only if the jury found the defendant not guilty of murder, was it to determine whether defendant had been proved guilty of manslaughter beyond a reasonable doubt. The jury returned a verdict finding defendant guilty of manslaughter and judgment was entered thereon. From that judgment the State did not and could not appeal.

It is not significant whether we call the jury's failure to convict the defendant of murder an "acquittal" or "implied acquittal". Its effect is to bar the court from entering a judgment of conviction or imposing pun-

ishment for that crime. The effect of the majority decision is to permit the State to accomplish collaterally what it is precluded from doing directly, and solely as a consequence of defendant's exercise of his constitutional right of appeal. Arizona Constitution, Article II, Section 24. There is no reasonable justification or rational basis for subjecting defendant to a second trial of a crime for which he has once been tried and not convicted, merely because he has appealed from conviction of another, though related and lesser, crime.

It has been suggested that defendant's decision to appeal from the manslaughter conviction constitutes a "waiver" of his right not to be retried for murder. Waiver is a legal conclusion predicated on a party's voluntary relinquishment of a known right. A holding that an appeal from a conviction for the lesser offense does not permit retrial for the greater offense means that no right has been relinquished. Even the majority decision herein does not afford application to defendant Thomas of the consequences of waiver. This decision is the first to construe the double jeopardy provisions of the Arizona Constitution and, accordingly, it cannot fairly be said that defendant Thomas knew that his appeal constituted a relinquishment of his right not to be tried for the greater offense. Defendant might be said to have voluntarily and knowingly relinquished or waived this right, if at all, only if this Court had, prior to his appeal, determined and made known the effect of such appeal.

Indeed, the consequences of the so-called waiver flow not from the fact of defendant's appeal, but rather from its success. If the defendant had failed to demonstrate on appeal that error prejudicial to him had been committed in the trial court, the judgment of conviction would have been affirmed and the State thereafter precluded from retrying defendant for the greater offense. Only the fact that defendant was prejudiced by error made in the course of the trial, requires him to stand trial a second time for the greater offense. The point is that the rule adopted by the majority penalizes not the defendant whose appeal has been unsuccessful, but only the defendant who has demonstrated that substantial justice was once denied him (see Arizona Constitution, Article VI, Section 22). Thus, the defendant who was not accorded substantial justice the first time suffers risks greater than those incurred by the defendant who has once received a fair trial.

The injustice of the majority decision is that it imposes upon a defendant an awful choice which may, as in the instant case, compel him to ante his own life in a gamble for his freedom. The defendant who has cause for a successful appeal must decide whether to avail himself of his constitutional right of appeal and incur the risks attendant upon a retrial of the greater crime for which he has once been tried and not

convicted; or to relinquish that right and suffer a conviction, albeit for the lesser offense, founded on error. How lightly, indeed, we esteem this constitutional right when we require that it be exercised in a manner so perilous to the person intended to be benefited by it.

The majority opinion is a precedent for the triumph of technical rules over substantial justice. It is founded on the procedural happenstance that a defendant is tried for the several degrees of murder and manslaughter in one trial. If our procedure required a separate trial or a separate judgment for each degree of homicide, and permitted a defendant to limit his appeal to a particular judgment, there would be no basis, even procedurally, for a retrial of the degree of homicide for which a non-appealable judgment of no conviction had been entered. No reason appears why this slight distinction in procedure should effect a weighty difference in substance.

The constitutional rights and privileges of our citizens ought to be enhanced, not restricted. The spirit and purpose of the rule against double jeopardy deserves our careful consideration and respect.

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U.S. at pages 187–188, 78 S.Ct. at page 223.

I believe that the decision of the majority renders a disservice to our constitutional rights and privileges. The certified question should be answered Yes.