419 P.2d 69

**The STATE of Arizona, Appellee,**
**v.**
**Randolph McCLENDON, Appellant.**
**No. 1634.**

Supreme Court of Arizona.

In Banc.

Oct. 14, 1966.

Rehearing Denied Nov. 15, 1966.

Darrell F. Smith, Atty. Gen., John V. Riggs, Asst. Atty. Gen., and Jerry L. Smith, County Atty., Coconino County, for appellee State of Arizona.

Richard K. Mangum, Flagstaff, for appellant.

UDALL, Justice.

On September 17, 1964, an information was filed in the Superior Court of Coconino County charging the appellant, Randolph McClendon, hereinafter referred to as defendant, with the first degree murder of his ex-wife, Winona Bond McComas. The jury returned a verdict of murder in the second degree on his plea of not guilty and he

was sentenced to a term of not less than twenty years nor more than his natural life. From the judgment and sentence thereon defendant appeals.

Defendant married the deceased, Winona McComas, in 1952. It appears that both spouses were heavy drinkers and that during the course of their marriage they had frequent quarrels and disputes, which eventually led to a divorce in 1961. In 1964, defendant wrote the deceased, stating that he felt he had conquered his drinking problem and suggested meeting her in Williams on September 15, 1964, to attempt a reconciliation. To this suggestion the deceased agreed, whereupon defendant and Winona met and stayed the night of the 15th at a motel in Williams. By the morning of the 16th, they had apparently resumed their habit of drinking and they had an argument which was overheard by other guests of the motel. Later that same day after driving to Flagstaff, the couple were observed engaging in another quarrel while lunching in a restaurant.

Defendant and his ex-wife spent the night at a motel in Flagstaff and on the morning of the 17th they arose late and returned to Williams, but not before the defendant attempted to purchase a revolver at a sporting goods store. Defendant did in fact buy one, but after trying it out, returned it for a refund because he felt it did not function properly. Upon arriving in Williams, the defendant purchased a .22 caliber rifle and a box of shells, after which he and the deceased checked into a motel at approximately one o'clock P.M. Sometime shortly before three o'clock P.M., defendant picked up two box lunches to go from a restaurant. His appearance and demeanor at that time indicated he had been drinking. The couple then left Williams for the Grand Canyon.

At approximately 5:30 P.M., Dr. Patrick Robertson, an M.D. on vacation, came upon an automobile parked at a lookout point at the Grand Canyon. He found Winona inside the car, dead from a single bullet wound in her head, and the defendant lying on the ground on the driver's side, bleeding from a bullet wound in his mouth. This latter wound appeared to have been self-inflicted. While Dr. Robertson was administering first aid to defendant, he asked the doctor several times "if she (Winona) was all right?" Defendant was rushed to the Camp Hospital at the Grand Canyon for emergency treatment and was later transferred to the Williams Hospital. Defendant regained consciousness about seven o'clock on the morning of September 18th, at which time he claimed and continued to claim throughout the trial that he had no memory of what had happened at the Grand Canyon.

The defendant presents four questions to this Court for review. His first contention is that he was deprived of due process of law under the fifth and fourteenth amendments to the United States Constitution because he was tried for a capital crime under an information rather than under a grand jury indictment. The gist of defendant's argument is that Rule 78 of the Arizona Rules of Criminal Procedure, 17 A.R.S., and Article II, Section 30 of the Constitution of the State of Arizona, A.R.S., from which the authority for rule 78 is derived, are repugnant to the fifth amendment because that amendment states: "No person shall be held to answer for a capital * * * crime, unless on a presentment or indictment of a Grand Jury," whereas, rule 78 reads: "Every felony * * * shall be prosecuted by indictment or information * * *." Defendant urges that the fourteenth amendment to the United States Constitution makes the above quoted provision of the fifth amendment directly applicable to the State of Arizona and that the laws of this state must therefore conform thereto.

■ We find no merit in this contention for it is a long established rule that the fifth amendment of the Constitution of the United States does not require that a state proceed in felony prosecutions only upon indictment by a grand jury. Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232; Saunders v. Buckhoe, 346 F.2d 558 (Cir.Ct.App. 6th, 1965);

United States ex rel. Priore v. Fay, 232 F. Supp. 906 (U.S.D.C.S.D.N.Y., 1964), Brown v. State of New Jersey, 175 U.S. 172, 20 S. Ct. 77, 44 L.Ed. 119; Hudgens v. Clark, 218 F.Supp. 95 (D.Or.1963). We do not construe the ruling of the Supreme Court in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, as changing this rule. The *Malloy* decision dealt specifically only with that portion of the fifth amendment applying to the privilege against self-incrimination.

Furthermore, this Court is of the opinion that an information as an alternative method of holding a defendant to answer for a felony in no way deprives an accused of due process since the interests of the defendant are as fully protected as if he were held under a grand jury indictment. An information is merely a preliminary proceeding and can result in no final conviction except after a regular trial conducted in the same manner as in cases arising after indictment by a grand jury.

Three days before the trial counsel for defendant filed a motion to postpone trial and commit defendant to an institution. This motion was denied by the lower court on the day of the trial. Defendant contends it was error for the trial court not to have granted the continuance since such request was made on the ground that he was suffering from amnesia which rendered him unable to properly assist counsel in his own defense. Defendant argues that he did not petition the court for a postponement on the theory his amnesic condition would forever protect him from trial for he does not contend that his amnesia negates criminal responsibility for his alleged act. However, if there is adequate medical evidence which points to the likelihood that his condition is temporary and that he may recover his memory, whereby he could then properly assist counsel in his defense, then, defendant claims that a proper exercise of judicial discreation would demand the allowance of a reasonable continuance so that he could undergo a reasonable amount of treatment. It follows from the above that if the medical evidence is such that there is doubt as to whether a defendant's amnesia is permanent and total or merely temporary, a postponement of trial should be granted to allow for further examination so that a concrete determination may be made.

We are of the opinion that defendant's contention is well taken, for it is supported by logic and every consideration of humanity and justice. It is our belief it would be a reproach to justice if a man, while suffering from a temporary amnesic condition which could be alleviated by a reasonable amount of treatment, was compelled to go to trial at a time when he was not sufficiently in possession of his memory to enable him to properly assist his counsel. It would be a similar reproach if a man, while suffering from amnesia of an uncertain type and extent, was compelled to go to trial when the possibility existed that a further examination would reveal his condition to be temporary and susceptible to treatment. In both instances, if a reasonable continuance. was not granted the safeguards which the law adopts in the punishment of crime and the upholding of justice would be rudely invaded by the courts whose duty it is to uphold the law in all its integrity. Our inquiry is thus directed to the question of whether the lower court erred in not granting a postponement of trial under the facts and the state of the medical evidence in the case at bar.

The following three reasons are indicated by the trial court as the bases for its denial of defendant's motion: first, the motion was not timely made; second, the court found that defendant was capable of assisting in his own defense; third, it found that it would serve no useful purpose to continue the trial until a later date since a complete recovery by the defendant of every memory function appeared unlikely.

We find ourselves unable to agree with the lower court's determination that the motion was not timely made. The record shows that defendant was arraigned on December 1, 1964, and that shortly thereafter, on December 22d, counsel for de-

fendant filed with the court a petition for a psychiatric examination of defendant. The State opposed it and on January 7, 1965, the court denied the petition. Four days later, on January 11th, defendant's counsel filed a notice of intention to show insanity as a defense together with a request to have the defendant examined by two psychiatrists pursuant to Rule 250 of the Arizona Rules of Criminal Procedure. This request was also opposed by the State but the court, on January 18th, granted it on the stipulation of counsel that only one psychiatrist be used in the examination and that the psychiatrist should not have to appear at trial. However, it was not until February 1st that defendant was examined by Doctor Bendheim, and subsequent thereto the doctor submitted a written report setting forth his conclusions. The motion to continue was filed on February 5th, and counsel for defendant stated to the court on the day of the trial that the " * * * motion was filed about fifteen minutes after I got Doctor Bendheim's report * * *." The record further discloses that defendant was an indigent and had no funds with which to provide himself with expert examination, and thus it was not until Doctor Bendheim's report was received by defendant's counsel that there appeared sufficient medical corroboration of defendant's amnesic condition upon which to base a motion for a continuance. Considering the foregoing facts, we think that defendant's motion was timely made

The remaining two reasons which the court gave for denying defendant's motion may be considered together for they both were findings based on the testimony of the one psychiatrist who examined the defendant. A careful reading of the entire record does not disclose any testimony which supports the lower court's statement that " * * * under the unqualified opinion of Doctor Bendheim [defendant] is capable of assisting in his defense * * *." The testimony of Doctor Bendheim appears to contradict such a conclusion. It reads:

"Q Was it your conclusion, Doctor, that the defendant was, as a result of your examination, unable to assist me in defending him concerning the facts of this event from the time he left Williams until the time he woke up in the hospital?

"A I formed the opinion that he was likely—it was very likely that he was unable to help you in that respect."

The trial court's finding that it would serve no useful purpose to grant a continuance because of the unlikeliness of defendant ever completely recovering his memory is presumably based upon the following testimony of Doctor Bendheim:

"I consider a complete recovery of every function unlikely for two reasons:

The Arizona State Hospital is, at present, not well equipped to perform the necessary type of treatment and has not been so equipped during the last year or longer. It takes skilled and prolonged psychiatric observation and special tests including hypnosis, sodium pentothal or so called truth serum and that sort of thing to attempt to lift amnesia.

"Now, aside from this, I believe that this man has had organic features which, with a great deal of probability, could produce some degree of amnesia. Mainly, a greater or lesser degree of intoxication and it would be important to find out how great, how deep the intoxication was and secondly, the head injury with resulting brain damage, at least brain concussion, I would assume, and also resulting shock, probably from loss of blood, I would assume. You notice that I am not accurate in my statements because I don't know all the facts, but I do feel that there is presumptive evidence to indicate that he indeed has some disturbance of memory."

In the final analysis we find that all the doctor is really saying is that defendant has some disturbance of memory but he cannot be certain of any of his statements concerning the depth of amnesia because he

does not know all the facts; also, because it takes prolonged psychiatric observation and special tests to attempt to lift amnesia the State Hospital is not well equipped to perform such treatment.

It should be noted the record discloses that the above conclusion was reached after less than a one-hour examination of defendant, and that Doctor Bendheim admitted on cross-examination he had never seen an x-ray of defendant's head or a doctor's report of his injuries. Such testimony, in the opinion of this Court, does not provide an adequate ground for a denial of a motion to postpone trial and commit defendant to an institution but rather strongly suggests that such a motion should have been granted in accord with the conclusion contained in Doctor Bendheim's written report to the court that " * * * hospitalization is recommended." To reiterate, we think that if the medical evidence is such that it evinces a lack of certainty as to whether defendant's amnesia is of the permanent or temporary type, a continuance should be granted to allow for a concrete determination to be made. The statements of the examining psychiatrist, standing alone, cannot be said to be definitive evidence finding one way or the other, but rather it points out the need for further examination of defendant. We feel compelled to note, parenthetically, that this need for a continuance quite probably would never have arisen if two experts had been appointed by the lower court to examine defendant, as is provided for under Rule 250. Therefore, we are of the opinion that the intent of the legislature in enacting Rule 250 was to make it mandatory for a trial court judge to appoint two experts in every instance wherein the judge believes a hearing under the rule is warranted.

The inadequacy of the single examination of defendant by the doctor and the uncertainty of the extent of defendant's amnesic condition are even more clearly reflected in the testimony Bendheim gave after discussing defendant's condition with Nurse Otero, who had cared for defendant on the night of the alleged crime after he was brought to the hospital. This testimony, which follows, prompted the State to argue in its brief that defendant was malingering and that his amnesia was not genuine.

"I would say then that the amnesia which I found—thought I found in my examination in Phoenix, was not as deep as I thought it was; not as complete as I thought it was.

\* \* \* \* \* \*

"Q So, your opinion still is that he still has amnesia, but you're not sure about the degree of it, would that be an accurate statement?

"A Yes, Sir."

After carefully considering all the evidence presented to the trial court we are of the opinion the trial court abused its discretion in denying defendant's motion for a continuance. There appears to be too much uncertainty as to defendant's actual condition to not grant a reasonable time for a more thorough examination. It may be defendant's amnesia is such that a reasonable amount of treatment would effectuate a recovery of his memory and he could then properly assist his counsel in his defense. The possibility that in granting a continuance in a case such as the one at bar will sometimes result in a person escaping punishment for a little while longer and impose upon the State an added expense ought not to deprive the defendant of a fair and just trial.

Having determined that the trial court did err and that its judgment must therefore be reversed, we need not consider the other questions raised by defendant.

Judgment reversed, and the cause remanded for a new trial not inconsistent with this opinion.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and LOCKWOOD and McFARLAND, JJ., concur.