437 P.2d 421

**STATE of Arizona, Plaintiff,**

**v.**

**Randolph McCLENDON, Defendant.**

**No. 1790.**

Supreme Court of Arizona,
In Banc.

Feb. 7, 1968.

Rehearing Denied March 12, 1968.

Jerry L. Smith, Coconino County Atty., Flagstaff, for plaintiff.

J. R. Babbitt, Jr., Kenneth J. Lincoln, Flagstaff, for defendant.

LOCKWOOD, Justice:

Two questions have been certified to this Court for determination under Rule 346 of the Rules of Criminal Procedure, 17 A.R.S. (1956).

"QUESTION NUMBER 1

"Where an accused is sane and competent in all respects, except that he is suffering from permanent amnesia which prevents him from recalling facts immediately surrounding the alleged crime of first degree murder, and the accused is the only witness as to the alleged crime, and the prosecution's case is otherwise circumstantial and where the accused's plea is one of 'not guilty':

"a) Is such an accused competent to stand trial?

"b) Would the trial of the accused violate his right to due process?

"c) Would the commitment of the accused to the State Mental Hospital violate his right to due process?

"d) If such accused cannot be tried nor committed to the State Hospital, what disposition should be made of him?

"QUESTION NUMBER 2

"Where an accused, charged with first degree murder, has been found guilty of second degree murder by a jury and successfully appeals his conviction, does a retrial of such defendant on the original charge of first degree murder violate his constitutional right of appeal?"

The facts of this case are clearly set forth by Justice Udall in our previous decision of State v. McClendon, 101 Ariz. 285, 419 P.2d 69 (1966). Suffice it to say that approximately five hours after the defendant purchased a .22 calibre rifle while on a trip with his ex-wife, both of them were found at a lookout point at the Grand Canyon: defendant on the ground outside his car suffering from an apparently self-inflicted head wound, and his ex-wife inside the car dead from a single bullet in her head. Defendant was subsequently tried for first degree murder and found guilty of murder in the second degree on his plea of not guilty. We reversed the conviction and remanded for a new trial upon the grounds that the trial court abused its discretion in denying the defendant's motion to postpone trial and commit the defendant to an institution when it appeared that defendant was suffering from an amnesic condition of undetermined duration. We held that it would be a reproach to justice " * * * if a man, while suffering from amnesia of an uncertain type and extent, was compelled to go to trial when the possibility existed that a further examination would reveal his condition to be temporary and susceptible to treatment". State v. McClendon, supra, 101 Ariz. at 288, 419 P.2d at 72.

Subsequent to the reversal a hearing was had pursuant to Rule 250 of the Rules of Criminal Procedure, 17 A.R.S. (1956), to determine the competency of this defendant to stand trial. At the conclusion of the

hearing and examinations, the trial court made the following findings:

"After reviewing the reports of the examining physicians and considering the testimony the Court finds that *the Defendant is sane, rational and competent in all respects except* that he is suffering from amnesia, which prevents him from recalling the facts and circumstances immediately surrounding the alleged crime. This amnesia would appear from the testimony of the experts to be relatively permanent in nature, at least it is apparent that a reasonable amount of treatment will not effectuate a recovery of the Defendant's memory.

"*The Court finds that the Defendant understands the nature of the charges pending against him* and is able to assist counsel with the exception of being able to relate to his counsel the facts and circumstances surrounding the alleged crime. Obviously, as counsel has brought to the Court's attention, this creates a problem which has not been determined in this jurisdiction to my knowledge with respect to the disposition that is now to be made of the Defendant.

"It is the Court's feeling that he cannot be committed to a State Hospital in view of the fact that he is not insane, and there is a question as to whether he is now competent to stand trial." (Emphasis supplied.)

## QUESTION NUMBER ONE

We hold that (a) the defendant is competent to stand trial; (b) the trial will not violate his right to due process; (c) and (d) if there is a reasonable basis that would support a conclusion that commitment to the State Hospital would aid the defendant in some material way, such commitment would not violate due process.

■ In holding thus, however, we feel constrained to emphasize that each case concerning amnesia must be considered on its own merits and that no absolutes may be justified without investigation. We reaffirm our holding in the first *McClendon*

decision that it is a reproach to justice to try a man suffering from amnesia of an uncertain type and extent when it appears that reasonable continuance of the trial may provide the time needed to effectuate a limited or full recovery from the amnesic state, especially when the amnesia goes to the facts of the crime alleged. State v. McClendon, supra, 101 Ariz. at 288, 419 P.2d at 72. But we underline the obvious in declaring that amnesia "is nothing more than a failure of memory concerning facts or events to which an individual has been exposed" and that "every individual's memory process is marked by some distortion which may occur at any point" and "as a result, *no one's memory is in fact complete, even under ideal conditions * * * everyone is amnesic to some degree*". (Emphasis supplied.) 71 Yale Law J. 109–111 (1961–62).

■ Precedent in this area is meager and questionable. One or two courts have expatiated upon the absurdity of assuming that a defendant suffering from amnesia would ever be tried for a crime, and then in the same breath promptly proceeded to uphold the conviction of an amnesic after proper rationalizations have been made. This grandiloquence is exemplified in classic form by the United States District Court of Western Missouri in the case of United States v. Sermon, 228 F.Supp. 972 (W.D.Mo., W.D.1964). In a review of a pre-trial proceeding to determine the defendant's competency to stand trial for violations of the Internal Revenue Code when the defendant's memory was faulty, the court said at page 976, " * * * certainly no one in the 1960's would dream of putting a defendant suffering from established amnesia to trial for a crime of any sort". Then, after first elaborating on the fact that the defendant was suffering from limited memory due to a "chronic brain syndrome" and that "[a]ll the doctors ruled out those possibilities" that the defendant was feigning or that he was in any way guilty of malingering, the court held that there was sufficient evidence to conclude

that the defendant was "fully able" to furnish his counsel with sufficient factual information to properly prepare his defense. Then the court made the interesting observation that:

"We cannot conceive that a defendant who is *competent to understand the nature of the proceedings against him* is not also mentally alert enough to advise his counsel whether the *broad outline of the evidence* that the Government has indicated it will adduce against him is or is not fabricated." (Emphasis supplied.) Id., at 980.

There is merit to the last statement, especially when much of the evidence is circumstantial and can be explained away by the accused.

[1] The concern of the courts in this area is the very real danger that amnesia can be feigned easily and that discovery and proof of feigning and malingering is difficult, especially when the defendant refuses to take the stand. The Tennessee Supreme Court, quoting from Gray, Attorneys' Textbook of Medicine, (3rd Edition), in a decision upholding the conviction of a defendant who alleged amnesia concerning the period of time during which the crimes of grand larceny, reckless driving, and leaving the scene of the accident occurred said:

" 'Amnesia, loss of memory, may lead to crimes entirely unknown to the culprit at a later date. That is rare. More frequently, an accused, remembering full well what he has done, alleges amnesia in false defense. He is a malingerer. To prove his innocence or guilt may be most difficult.' " Thomas v. State, 201 Tenn. 645, 652, 301 S.W.2d 358, 361 (1956).

However, such reasoning reflects an undercurrent of speciousness and we do not choose to base our decision on that basis.

The Supreme Court of Pennsylvania was faced with the problem of amnesia in the case of Commonwealth ex rel. Cummins v. Price, 421 Pa. 396, 218 A.2d 758 (1966). Defendant was under indictment for murder

and he alleged that he suffered injury at the time of the killing which resulted in "permanent loss of memory of [the facts, circumstances and all] the events prior to, at the time of and subsequent to the circumstances surrounding his arrest". Defendant argued that to bring him to trial would violate his constitutional rights since he would be unable "to testify in his own behalf and otherwise intelligently aid his counsel in preparing and presenting a rational defense". On this basis the defendant asked for an absolute and complete discharge from custody and that the murder indictment be dismissed, or, in the alternative, that the trial on the murder indictment be continued until he regained his memory and that he be admitted to bail.

The defendant had been found outside his car suffering from a bullet wound in his head, and a woman inside his car dying of a single bullet in her head. The Pennsylvania Supreme Court held [1] that it would not be a violation of the defendant's constitutional rights to stand trial, even though all of the evidence was circumstantial. In reaching their decision, the court said:

" * * * we are constrained to hold that defendant is *not entitled* at this time (1) to a discharge from the indictment for murder, or (2) to a stay of proceedings under the aforesaid common law test or under the Mental Health Act. This defendant (we repeat) is able to comprehend his position as one accused of murder, is fully capable of understanding the gravity of the criminal proceedings against him, *and is as able to cooperate with his counsel in making a rational defense as is any defendant who alleges that at the time of the crime he was insane or very intoxicated or completely drugged, or a defendant whose mind allegedly went blank or who blacked out or who panicked and contends or testifies that he does not remember anything.* (Emphasis supplied.)

"We further note that defendant contends on the one hand that his amnesia

1. Two of the seven justices dissented.

is permanent (although the lower Court wisely refused to find this as a fact); and on the other hand, that criminal proceedings be stayed until such time as he recovers his memory. If in fact the condition of amnesia *is permanent,* defendant's contention (1) would require Courts to hold that such amnesia will permanently, completely and absolutely *negate all* criminal responsibility and (2) will turn over the determination of crime and criminal liability to psychiatrists, whose opinions are usually based in large part upon defendant's self-serving statements, instead of to Courts and juries, and (3) will greatly jeopardize the safety and security of law-abiding citizens and render the protection of Society from crime and criminals far more difficult than ever before in modern history.

"Unless an accused is legally insane, the law is not and should not be so unrealistic and foolish as to *permanently free, without acquittal* by a Judge or a jury, a person against whom a prima facie case of murder is made out." (Emphasis in original.) Commonwealth v. Price, supra, at 763.

In short, limited amnesia does not totally incapacitate the defense and the defendant is free to assist counsel in numerous ways. We believe that a defendant is entitled to a fair trial, but not necessarily to a perfect trial.[2]

## QUESTION NUMBER TWO

█ This question is controlled by our decisions in State v. Thomas, 88 Ariz. 269, 356 P.2d 20 (1960) and State v. White, 103 Ariz. 85, 436 P.2d 904 (Feb. 7, 1968). Although these decisions speak directly to the question of double jeopardy, the fact situations are of such a nature that most

of the same principles apply: e. g. it is argued that to try a person for the greater crime charged after he successfully appeals a conviction of the lesser included crime not only places him in double jeopardy, but also punishes the defendant for seeking review of his conviction and "chills the right of appeal". See the dissenting opinion of Justice Fortas in Cichos v. State of Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966). Such a position is logically fallacious: on the one hand the defendant argues on appeal that the verdict is so affected with trial error and injustice that it must be set aside; on the other hand, however, the defendant argues that the part of the verdict which is favorable to him is just, fair and free from any error whatsoever and that to grant the defendant a new trial in which the prosecution has an opportunity to make the original charges as to the greater crime and to correct any errors that possibly precluded a verdict of guilty for the greater crime is not fair to the defendant (i. e. the defendant might be convicted and punished for the crime he committed). Question number two is answered in the negative.

Part (a) of question one is answered in the affirmative; parts (b) and (c) are answered in the negative; part (d) is left unanswered as it was contingent on an affirmative answer in part (c); question number two is answered in the negative.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER, J., concur.

BERNSTEIN, Justice (dissenting).

I dissent for the same reasons discussed in my dissenting opinions in State v. White, 103 Ariz. 85, 436 P.2d 904, handed down February 7, 1968, and State v. Thomas, 88 Ariz. 269, 273, 356 P.2d 20, 22.

---

2. State v. Severns, 184 Kan. 213, 336 P. 2d 447 (1959), where the court upheld a conviction of second degree murder in

which the defendant lost his memory, between his first and second trial.